UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Shreedevi Vora

Write the full name of each plaintiff.

\_\_\_\_\_CV_____
(Include case number if one has been assigned)

-against-

New York City Department of Education; Kristin

Do you want a jury trial?
☒ Yes    ☐ No

Erickson, Principal of Manhattan Comprehensive ~~Night and Day High School; Paul Rotondo,~~ Superintendent of Transfer High Schools

Write the full name of each defendant. The names listed above must be identical to those contained in Section I.

# EMPLOYMENT DISCRIMINATION COMPLAINT

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

## I.      PARTIES

### A.   Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

Shreedevi                                          Vora
First Name                    Middle Initial       Last Name

6009 Boulevard East
Street Address

Hudson County, West New York       NJ                    07093
County, City                                State          Zip Code

(917) 808-8733                       shreemvora@yahoo.com
Telephone Number                     Email Address (if available)

### B.   Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. (Proper defendants under employment discrimination statutes are usually employers, labor organizations, or employment agencies.) Attach additional pages if needed.

Defendant 1:     New York City Department of Education, c/o Sylvia O. Hinds-Radix
                 Name
                 Corporation Counsel of the City of New York - 100 Church Street
                 Address where defendant may be served
                 New York, New York          NY              10007
                 County, City                State           Zip Code

Defendant 2:     Kristin Erickson, Principal of Manhattan Comprehensive Night and
                 Name
                 Day High School - 240 2nd Avenue
                 Address where defendant may be served
                 New York, New York          NY              10003
                 County, City                State           Zip Code

Defendant 3:

Paul Rotondo, Superintendent of Transfer High Schools

Name

Address where defendant may be served

County, City                        State                Zip Code

## II.    PLACE OF EMPLOYMENT

The address at which I was employed or sought employment by the defendant(s) is:

Manhattan Comprehensive Night and Day High School

Name

240 2nd Avenue

Address

New York, New York            NY                10003

County, City                        State                Zip Code

## III.   CAUSE OF ACTION

### A.  Federal Claims

This employment discrimination lawsuit is brought under (check only the options below that apply in your case):

☒  **Title VII of the Civil Rights Act of 1964**, 42 U.S.C. §§ 2000e to 2000e-17, for employment discrimination on the basis of race, color, religion, sex, or national origin

The defendant discriminated against me because of my (check only those that apply and explain):

☒  race:          South Asian Indian

☐  color:

☐  religion:

☐  sex:

☒  national origin:   Indian

☒ **42 U.S.C. § 1981**, for intentional employment discrimination on the basis of race

My race is:   South Asian Indian

☐ **Age Discrimination in Employment Act of 1967**, 29 U.S.C. §§ 621 to 634, for employment discrimination on the basis of age (40 or older)

I was born in the year:

☐ **Rehabilitation Act of 1973**, 29 U.S.C. §§ 701 to 796, for employment discrimination on the basis of a disability by an employer that constitutes a program or activity receiving federal financial assistance

My disability or perceived disability is:   Generalized Anxiety Disorder

☒ **Americans with Disabilities Act of 1990**, 42 U.S.C. §§ 12101 to 12213, for employment discrimination on the basis of a disability

My disability or perceived disability is:   Generalized Anxiety Disorder

☐ **Family and Medical Leave Act of 1993**, 29 U.S.C. §§ 2601 to 2654, for employment discrimination on the basis of leave for qualified medical or family reasons

## B.  Other Claims

In addition to my federal claims listed above, I assert claims under:

☒ **New York State Human Rights Law**, N.Y. Exec. Law §§ 290 to 297, for employment discrimination on the basis of age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status

☒ **New York City Human Rights Law**, N.Y. City Admin. Code §§ 8-101 to 131, for employment discrimination on the basis of actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation, alienage, citizenship status

☐ Other (may include other relevant federal, state, city, or county law):

## IV.    STATEMENT OF CLAIM

### A.  Adverse Employment Action

The defendant or defendants in this case took the following adverse employment actions against me (check only those that apply):

☐   did not hire me

☐   terminated my employment

☐   did not promote me

☒   did not accommodate my disability

☒   provided me with terms and conditions of employment different from those of similar employees

☒   retaliated against me

☒   harassed me or created a hostile work environment

☒   other (specify): _____

_____

### B.  Facts

State here the facts that support your claim. Attach additional pages if needed. You should explain what actions defendants took (or failed to take) *because of* your protected characteristic, such as your race, disability, age, or religion. Include times and locations, if possible. State whether defendants are continuing to commit these acts against you.

Please see the attached addendum.
_____

_____

_____

_____

_____

_____

As additional support for your claim, you may attach any charge of discrimination that you filed with the U.S. Equal Employment Opportunity Commission, the New York State Division of Human Rights, the New York City Commission on Human Rights, or any other government agency.

## V.      ADMINISTRATIVE PROCEDURES

For most claims under the federal employment discrimination statutes, before filing a lawsuit, you must first file a charge with the U.S. Equal Employment Opportunity Commission (EEOC) and receive a Notice of Right to Sue.

Did you file a charge of discrimination against the defendant(s) with the EEOC or any other government agency?

     ☒   Yes (Please attach a copy of the charge to this complaint.)

         When did you file your charge?   June 20, 2022

     ☐   No

Have you received a Notice of Right to Sue from the EEOC?

     ☒   Yes (Please attach a copy of the Notice of Right to Sue.)

         What is the date on the Notice?   November 2, 2022

         When did you receive the Notice?   November 5, 2022

     ☐   No

## VI.    RELIEF

The relief I want the court to order is (check only those that apply):

     ☐   direct the defendant to hire me

     ☐   direct the defendant to re-employ me

     ☒   direct the defendant to promote me

     ☐   direct the defendant to reasonably accommodate my religion

     ☒   direct the defendant to reasonably accommodate my disability

     ☒   direct the defendant to (specify) (if you believe you are entitled to money damages, explain that here)

Compensation for having to hire an attorney; emotional distress damages.

## VII.   PLAINTIFF'S CERTIFICATION

By signing below, I certify to the best of my knowledge, information, and belief that:
(1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| 12/23/2022 | s/ Shreedevi Vora |
|---|---|
| Dated | Plaintiff's Signature |
| Shreedevi | Vora |
| First Name          Middle Initial | Last Name |
| 6009 Boulevard East | |
| Street Address | |
| Hudson County, West New York        NJ | 07093 |
| County, City        State | Zip Code |
| (917) 808 - 8733 | shreemvora@yahoo.com |
| Telephone Number | Email Address (if available) |

I have read the attached Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☐ Yes   ☒ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

**Federal Complaint Addendum for Shreedevi Vora on 12/23/2022**

1. I have been employed as a Living Environment I (biology) and science teacher by the NYCDOE since 2003 and at the Manhattan Comprehensive Night and Day High School (MCNDHS) since September 2008.

2. I am 54 years old. I am South Asian Indian. I have been diagnosed with generalized anxiety disorder since about 2014.

3. I had consistently received satisfactory, highly effective, and effective ratings at the school in different domains during observations. I have always been rated satisfactory or effective overall every year of my teaching prior to Kristin Erickson becoming Acting Principal/Principal.

4. On Friday, October 22, 2021, at 2:20 pm, Mr. David DiPadova (the UFT chapter leader of my school) held a " school culture preservation meeting." At the meeting, teacher Clay Davis put a letter in my hand that stated that (then Acting) Principal Erickson had summoned him to a disciplinary conference for stepping into the laboratory preparation area which is adjoined to the Science classroom. Apparently, Mr. Davis was working overtime, covering a class for an absent teacher, had been unable to eat lunch, and opened the door connecting the lab prep room to the classroom to get a cookie from the lab specialist. Acting Principal Erickson, who was walking around with Assistant Principal Raquel Hernandez, saw him and reprimanded him. Acting Principal Erickson then called him in for a disciplinary conference. This incident directed towards another teacher of color was a racialized "trigger" for me since it brought back memories of how then Assistant Principal of the guidance department Acting Principal Erickson had unfairly targeted me and filed corporal punishment allegations against me in February 2020. These charges were filed against me without any conversation with me or with the student or with the student's parents. These allegations were ultimately dismissed by the DOE for being unfounded and the case was closed. During this time period, Acting Principal Erickson failed to have a single conversation with me to understand what had happened in the classroom and escalated the situation, without full evidence, to a disciplinary summons. In hearing that another teacher of color had also received punishment for a situation that warranted conversation not punishment, the injustice of the administration's behavior triggered me.

5. On October 26, 2021, Acting Principal Erickson came to my ICT Living Environment Class (special education, co-teaching class) to conduct an informal unannounced observation. My co-teacher, Mr. Travis Morin, up until October 26, 2021, had been sick with an illness that prevented him from speaking for 3 weeks. Due to his illness, I had taught the ICT Living Environment without his support in class or with lesson plans. Finally, the week of October 26th, his voice was back, and we agreed that it would make

sense for him to lead the class. I had already created the lesson plan for that day and we modified it together, so I let Mr. Morin lead the class. Acting Principal Erickson rated me mostly ineffective on this observation, while my co-teacher received positive ratings.

6.  In a post observation meeting with Acting Principal Erickson the day after the observation on October 27, 2022, I explained that Mr. Morin had not been teaching for 3 weeks due to voice loss and that I had modified my lesson plan to allow Mr. Morin to lead in teaching a DNA related activity that he is comfortable with to help him get re-adjusted to the classroom. I requested that Acting Principal Erickson not write the observation report for me that day as I was not meant to teach during that period. I thought this request to Acting Principal Erickson was reasonable because at the professional development meeting in September 2021 in front of 40-50 faculty members, Acting Principal Erickson publicly stated that if she was observing a class that did not go well, she would not write the report and observe the class another time. Yet Acting Principal Erickson insisted that she would write the report rating me "ineffective" in most domains.

7.  At the October 27, 2021, post observation follow-up meeting, Acting Principal Erickson recommended that I observe other ICT co-teaching models and that I work with special education Assistant Principal Raquel Hernandez, on a weekly basis for "special education" ICT models and strategies. I informed Acting Principal Erickson that I was uncomfortable working with AP Hernandez. I was uncomfortable working with AP Hernandez because she has asked me to sign inaccurate language for students' IEPs which I had protested in the past, including modifying lesson plans for students with disabilities even though I did not have the appropriate licensing to do that. In addition, AP Hernandez had, on another occasion, yelled at me in front of students during a regents exam.

8.  After the October 27, 2021 follow-up meeting, I received e-mails from AP Hernandez pressuring me to meet with her during my only preparation period and my lunch period. These are the only 2 periods I have since I am teaching 6 periods this semester at the request of Acting Principal Erickson. District representative Ms. Patricia Crispino informed me that no meetings are to be conducted, mandated, or recommended during a teacher's preparation and lunch period based on my UFT contract. As I am required to have lunch and preparation periods, I could not partake in the offered options by AP Hernandez. I told AP Hernandez, as I had already told Acting Principal Erickson, that I needed a different kind of support, and this constant emailing was stressful. AP Hernandez's suggestions were going beyond the recommendations based even on the questionable observation report written by Acting Principal Erickson. Given my prior experience and ongoing behavioral patterns with AP Hernandez, I was feeling pressured, anxious and stressed to do things that seemed out of the bounds of what professional ethics require. I let AP Hernandez know that the "tone of her e-mails and

demands were causing me a lot of anxiety."

9. At this point I had tried to communicate patterns of targeted, discriminatory, and unusual behavior to the UFT Chapter Leader, in one-on-one conversations with Acting Principal Erickson, and with AP Hernandez. I realized that I needed support both for my co-teaching environment, and also for what seemed to be targeted and discriminatory behavior directed at me by the administration.

10. I filed an APPR complaint on November 1, 2021, with the UFT for the unfair observation. This is the first APPR complaint I have ever filed. I did not submit the complaint to Acting Principal Erickson within the designated 5 day period; therefore, the UFT could not proceed to escalate the complaint to an independent arbitrator.

11. On November 18, 2021, I asked the District Representative Ms. Patricia Crispino to contact Acting Principal Erickson for a 3-way meeting to request that Acting Principal Erickson consider removing the unfair observation report from my file and to give me the support that I had requested to teach the ICT class. After speaking with UFT District Representatives I learned that Principal Erickson violated observation policies when she observed and rated both Mr. Morin and me at the same time. Ms. Crispino reached out to Acting Principal Erickson via phone to request a 3-way meeting and Acting Principal Erickson refused to meet.

12. On December 16, 2021, I had emailed absent@mcndhs.com to let the school know I was having COVID-19 symptoms again, and after having COVID-19 in March 2020, would be out sick as a precaution. I had also sent an email outlining what would be happening for the next 2 days (December 16th and 17th, 2021) in each period I would be missing. The structure of the email outlining what was needed in each period is the same email structure I have used for over 5 years without any feedback. In addition, I have seen emails from my co-teacher Mr. Morin when he called out sick and they followed a similar format. Yet in a sarcastic and hostile response to my sickness related absence email, Assistant Principal Raquel Hernandez cc'ed all the other administrators in the school and demanded that I be more specific in what needs to be done in each period and gave me an outlined format. This format was never suggested to my co-teacher or me prior to this moment. Following my response pointing out that faculty had never been required to follow a format for reporting absences, Acting Principal Erickson then sent the email out to the entire faculty about an "absent" e-mail format.

13. For every minute action I have taken, there has been a disproportionate and targeted reaction. Even the absence email format that was sent to all the faculty, was only done after I pointed out that faculty had never been requested to use this structure before and they had not required Mr. Morin or other teachers that I am aware of to use this structure. I had already experienced targeted behavior in the past for requesting more

personal protective equipment and spacing for in person meetings due to COVID-19.

14. For example, in September 2021, I had suggested to Mr. DiPadova that instead of having faculty meetings in the auditorium, we should zoom in from our classrooms to keep one another protected. Mr. DiPadova said he discussed this with Acting Principal Erickson at a consultation committee meeting. According to Mr. DiPadova, Acting Principal Erickson insisted we should have in person meetings on Mondays and because everyone was vaccinated and therefore safe. Since I was in the first round of being infected and sick with COVID-19 in March 2020, I have been extra cautious. I began sitting by the window during faculty meetings to stay within the airflow. I, and one other teacher, always sit in the same spot near the window in the auditorium. In December 2021, after the escalated targeting that I have described above, after learning about the new Omnicron variant of COVID-19, that window was blocked by SMARTboards with no reason given for why airflow was being restricted. This action of blocking windows while seemingly innocuous, again does not make sense in the context of a more infectious COVID-19 variant and airflow and distancing being strong protective factors. It is only when recognizing the added context that I typically sit by that window, have made concerted efforts to be more protective about COVID-19, and have been targeted by Acting Principal Erickson that this action can be seen in its full light.

15. The intensity and scale of this retaliatory behavior has increased after I revealed to UFT Chair Leader Mr. DiPadova that Acting Principal Erickson 's behavior has been targeted towards teachers of color and is punitive in nature on October 22, 2021.

16. Due to multiple incidents and patterns, I believe I am being retaliated against by my school administration for my protected activities, like speaking out at a union school culture preservation meeting and for voicing my opinions on school safety protocols related to COVID and at school faculty meetings on Mondays.

17. On or about January 6, 2022, I retained an attorney to send a letter to retired Superintendent of Transfer High Schools, Paul Rotondo on my behalf regarding the unjust observation by Principal Erickson on October 26, 2022.

18. Subsequently, on January 19, 2022, Superintendent Rotondo invited me to a zoom conference and sent me a resolution letter informing me that the unfair October 26, 2021 classroom observation would be removed from my file; however, I would have to continue co teaching the special education Living Environment class.

19. On or about February 28, 2022, attorney Bryan Glass sent a follow up letter to Superintendent Rotondo because Principal Erickson was not adhering to some of the terms of Superintendent Rotondo's resolution letter.

20. On March 4, 2022, Superintendent Rotondo issued a second resolution letter granting me a "disability based accommodation" based on a letter from my psychiatrist Dr. Oscar Sandoval, assuring that I would be directly supervised and work collaboratively with Assistant Principal of Math and Science, Ms. Jimyung Nam.

21. Shortly after Superintendent Paul Rotondo issued the second resolution letter approving the accommodation to be supervised by AP Jimyung Nam, Principal Erickson hired a fifth assistant principal, Ms. Lafleur King, an English teacher, and put her in charge of supervising me.

22. This was a retaliatory move following an email I sent then Superintendent Paul Rotondo, Principal Kristin Erickson, then Executive Superintendent Tim Lisante, then Deputy Superintendent John Sullivan, and DOE Legal Counsel Lisa Becker on March 23, 2022, informing them that I was concerned that a fifth administrator had been hired at Manhattan Comprehensive Night & Day High School. I further informed them that I was concerned that academic departments in the school had been eliminated and the school had been reorganized suddenly and non-transparently.

23. Principal Erickson and retired Superintendent of Transfer High Schools Rotondo, other district leaders including current transfer high school Superintendent John Sullivan, and New York City Department of Education legal counsel Lisa Becker requested I be subjected to an Education Law section 2568 medical evaluation for my "mental fitness" to continue working allegedly based on absences related to COVID, medically certified sick days, personal days, and some lateness. In addition, the "mental fitness" evaluation was requested because my anxiety was exacerbated while teaching a special education co- teaching class for which I had been offered no professional development and little to no preparation time with the co-teacher. The administration's lack of support and harassing behaviors caused me to feel unsafe because I was being targeted, suffering heart palpitations, and panic attacks.

24. Currently, I am still being forced to work with and get observed by AP King who has no background in science. I have not yet had an "Initial Planning Conference" and classroom observation, and I do not know how I will be evaluated. I am concerned that my "end of the year rating" will be retaliatory.

25. On May 9, 2022, DOE medical Dr. Anne Garner declared me fit for duty, and I received final medical clearance to return to work.

26. On June 22, 2022, I sent my resume and application for the Dean's position to Principal Erickson, but she did not acknowledge my application.

27. I believe I am harassed and discriminated against based on my race/ national origin by my administration while my white co-teacher, Travis Morin, is never held accountable for his duties in the classroom. Additionally, my administration has revoked my reasonable disability accommodation to be supervised by an AP with a science background. The

administration's revocation of my reasonable accommodation and retaliatory behavior has exacerbated my generalized anxiety disability.



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**New York District Office**
33 Whitehall St, 5th Floor
New York, NY 10004
(929) 506-5270
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 11/02/2022

**To:** Shreedeiv Vora
6009 Kennedy Boulevard East
Apt A4
West New York, NJ 07093

Charge No: 16G-2022-03050

EEOC Representative and email:     Holly Shabazz
S/L Program Manager
HOLLY.SHABAZZ@EEOC.GOV

### DISMISSAL OF CHARGE

The EEOC is closing this charge because: Charging Party wishes to pursue matter in Federal District Court.

The EEOC has adopted the findings of the state or local fair employment practices agency that investigated your charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By:Timothy Riera
11/02/2022
Timothy Riera
Acting District Director

# New York State Division of Human Rights Complaint Form

## Individual filing the complaint

**Please provide the information requested below.**

**First Name**

Shreedeiv

**Middle Intial**

**Last Name**

Vora

**Street Address**

6009 Kennedy Boulevard East, Apt . A4

**City**

West New York

**State**

NJ

**Zip**

07093

**Are you completing this form for someone else?**

No

## Your complaint

**Jurisdiction**

Employment

## Employment

**Please specify where the discrimination occurred**

Employment (including paid internship and domestic workers)

**Are you currently working for the employer you are filing against?**

Yes

**Date of hire**

09/05/2003

**Position held or applied for**

Teacher

**For employment and internships, how many employees does this person/company have?**

15-19

**Acts of alleged discrimination: What did the person/company you are complaining against do? Check all that apply**

Denied me training
Gave me a disciplinary notice or negative performance review
Denied my request for an accommodation for my disability, or pregnancy-related condition
Harassed or intimidated me on any basis indicated here
Other - Write In (Required): Putting all responsibility for an ICT special education co-teaching class on me and none on my co-teacher

## Basis

**Basis of alleged discrimination in employment:**

**Age** (if you are at least 18 years of age; those under 18 are protected for all other characteristics listed below)
**Disability** (a physical or mental condition; includes denial of reasonable accommodation)
**Race/Color** (because you are Asian, Black, White, etc.; includes ethnicity; includes traits historically associated with race such as hair texture or hairstyle)
**Retaliation** (if you filed a discrimination case before, were a witness or helped someone else with a discrimination case, or opposed or reported discrimination due to category listed on this page)

**Please specify race/color:**

South Asian Indian American

**Please specify disability:**

Generalized Anxiety Disorder

**Date of birth**

11/28/1968

## You are filing a complaint against

**Entity that discriminated against you:**

**Name of entity**

NYC-Department of Education-Manhattan Comprehensive Night & Day High School

**Street Address**

198 Forsyth St

**City**

New York

**State**

NY

**Zip**

10002

**In what county or borough did the violation take place?**

New York Lower (Below 42nd Street)

**Phone Number**

(646) 654 - 1261

**Email address**

jsulliv3@schools.nyc.gov

**Fax Number**

**Company Website**

**Please provide the name, last name, and title of individual people who discriminated against you.**

Kristin Erickson (current principal of Manhattan Comprehensive Night & Day High School)
Raquel Hernandez (Assistant Principal Special Education)
DIstrict Leadership who granted an accommodation and then suddenly and non-transparently revoked it and authorized a 2568 medical evaluation (mis-use of State Law 2568)
Retired Superintendent Paul Rotondo
Current Acting Superintendent John Sullivan
Former Executive Superintendent TIm LIssanthe
Senior DOE Counsel Lisa Becker

**Date of the most recent act of alleged discrimination**

06/17/2022

## Description of discrimination

---

**Tell us more about each act of discrimination that you experienced.  Please include dates, names of people involved, and other details.  You must explain why you think these acts were discriminatory and how these acts are connected to the protected class (race, color, sex, disability, etc.) you selected previously.**

I am a tenured New York City Living Environment teacher. I used to teach at A. Philip Randolph HS in Harlem for 5 years. In 2008 I transferred to Manhattan Comprehensive Night & Day HS , a transfer High School, where I currently teach.

The current principal of the school, Ms. Kristin Erickson, has demonstrated a pattern of harassing and targeting me since February 2020. Ms. Erickson was hired by now retired principal Michael Toise to be Assistant Principal of Guidance.

.
1. While she was Assistant principal guidance, Ms. Erickson, filed a corporal punishment charge against me for a very minor incident with a student in the classroom, without any attempt at mediation. This charge was deemed unsubstantiated by the DOE and the case was closed after more than a year.

2. , Ms. Erickson came to my ICT Living Environment class and conducted a retaliatory classroom observation on October 26th, 2021. (ICT-Integrated co-teaching special education class for students having Individualized Education plans being integrated with other students- requires by law the presence of the content area teacher and a special education teacher that work seamlessly to design and deliver instruction and form assessments). The school has been out of compliance with special education requirements and the special education department has been mis-managed for years, and I am a victim of this. In November 2019, I filed a complaint with the DOE's Office of Special Investigations since the special education program of the school was out of compliance and I was not being provided a co-teacher in special education classes.

Please read attached PERB addendum (attachment 1) for a detailed history and account of a retaliatory classroom observation that Ms. Erickson conducted in my ICT-Living Environment class and gave me a poor observation report (attachment 2)before you read the rest of the complaint.

During this time, the United Federation of Teachers did not help me even though I reached out to the district representative Ms. Patricia Crispino and asked her if she could arrange a joint collaborative meeting between myself and Ms. Erickson, I received an e-mail from Ms. Crispino stating that Ms. Erickson did not want to meet (attachment 3). I subsequently sent an e-mail to Ms. Crispino and asked her if the union could help me in any capacity at all, Ms. Crispino did not respond. (attachment 4) . Ms. Crispino also had phone conversations with me during which she bullied me and said things like
"Why were you not moving around when the principal was observing the class. You have been doing this for a long time, you should know better". Why do you want me to be at the meeting when you meet the principal. Meet her one one one, do you just want me to sit there as a witness. Instead of supporting me, Ms. Crispino was supporting the principal and making me nervous.

On January 10th, 2022, I filed a complaint with the DOE's Office of Equal Opportunity against Ms. Erickson and special education assistant principal Raquel Hernandez. The Office of Equal Opportunity has not followed up with me since January 2022 even though I reached out to them again in February 2022 to follow up.(attachment 5)

Therefore, I retained Attorney . Bryan Glass. Attorney. Glass, wrote a letter and communicated the circumstances with now retired Superintendent of Transfer Schools, Mr.. Paul Rotondo, (attachment 6).

Subsequently, Superintendent Paul Rotondo invited me for a zoom conference and sent me a resolution letter (attachment 7).
Although Superintendent Rotondo had put some resolutions in place, Ms. Erickson was not adhering to these so Attorney Glass sent a second letter on my behalf to Superintendent Rotondo (attachment 8). Superintendent Rotondo

responded to the second letter Attorney Glass sent him by issuing a second resolution letter.- (attachment 9).
In the second resolution letter (attachment 9), Attorney Glass was assured by Superintendent Rotondo that based on the letter provided by my psychiatrist, Dr. Oscar Sandoval, I would be accommodated and able to collaborate and work with Assistant Principal of Math and Science , Ms. Nam.

Shortly after Superintendent Paul Rotondo issued the second resolution letter approving the accommodation to work Ms. Nam, Ms. Erickson hired a fifth assistant principal , Ms. Lafleur King, very suddenly and non-transparently since the school leadership team is very closed and secretive.

Ms. Erickson, also re-oranized the entire school along with support from her friend and school chapter leader Mr. David DiPadova without any input from faculty or staff,. This included putting newly hired assistant principal Ms. King, an English teacher, to observe of all teachers at night and Ms.Jimyung Nam, a science teacher, to observe all teachers during the day. Academic/Content departments were eliminated. I reported all of this to Superintendent Rotondo. (attachment 10)

Ms. King came to my ICT-Living Environment class 2 days in a row and kept staring at me while I was teaching. This made me very uncomfortable. Therefore, Attorney Glass sent a polite e-mail reminder to Superintendent Rotondo, informing him that Ms. Nam was my supervisor. Superintendent Rotondo sent an abrupt response to Attorney Glass, informing him that going forward Ms. King would supervise me. All of this transpired even though school and district leadership and Senior DOE counsel LIsa Becker were well aware of the anxiety and the nervous condition that I was experiencing due to the harassment, discrimination I was being subject to in relation to the ICT- co teaching class. (attachment 11)

So Superintendent Rotondo had provided me with an accommodation based on the letter written by my psychiatrist Dr. Oscar Sandoval and this accommodation was taken away from me very abruptly and non-transparently, without a conversation, which has exacerbated my anxiety.

In response , on March 23rd, I sent an email to Superintendent Rotondo, deputy superintendent John Sullivan, DOE counsel Lisa Becker, Executive Superintendent Tim Lissanthe and copied my attorney Mr. Bryan Glass. I informed them in the letter that Manhattan Comprehensive Night & Day HS had always had 4 assistant principals. A lot of things , including professional development were being denied due to budgetary reasons, I informed them that the school budget did not support the hiring of a fifth assistant principal. (attachment 12)

3. In a retaliatory move that same evening on March 23rd,, Ms. Erickson sent me an intimidating e-mail in what amounted to a . mis-use of State Law 2568 to file a medical evaluation of my mental fitness to continue working (attachment 13).. The virtual UFT 2568 meeting was conducted on March 30th, 2022 by DOE medical officer Dr. Anne Garner in the presence of UFT representative Mr. Thomas Bennet. . I was cleared immediately to continue teaching in the classroom by the Department of Education medical officer, Dr. Anne Garner. Dr. Garner requested an evaluation from my psychiatrist, Dr. Oscar Sandoval. to issue a final clearance. Following this Dr. Oscar Sandoval provided a letter (attachment 14) to DOE medical officer Dr. Anne Garner and final medical clearance was given by Dr. Anne Garner on May 9th, 2022 (attachment 15)

Attorney Bryan Glass advised me to file a complaint with SDHR.

Based on my tentative teaching program for the upcoming Fall 2022 semester, I am scheduled to co-teach a special education Living Environment class again, where I am supposed to prepare students to take the Living Environment regents exam in one semester. The entire burden of the class is placed on me although by DOE regulations both co-teacher share an equal responsibility to design and deliver instruction and form assessments. Newly hired assistant principal Ms Lafleur. King continues to be my supervisor. Although Ms. King was an English teacher until recently and does not fully grasp and understand the content, challenges and nuances involved in teaching a science regents class to high risk students in a transfer school. On Friday, June 27th during my final annual evaluation review, Ms. King kept asking me how I could be supported the following year for my ICT co-teaching class. When I suggested that a joint meeting be held between myself, and the co-teacher to place equal responsibility in lesson development and delivery, she dismissed the suggestion. She kept putting pressure on me , asking me how much students were "writing in class, made absurd suggestions on how I could make connections between the first and second sequences of the Regents Living Environment class". She started the conversation by saying I had a "Develpoing" rating that antagonized me. She then retracted and said she was joking and my end of the year rating was "an effective". I informed Ms. KIng, that based on what I had been through this year- nothing was funny.
Principal Kritin Erickson continues to subject me to supervision by an assistant principal who does know science content and is unable to help me. This even though, the school has in its employ, an assistant principal, Ms. Jimyung Nam, who has multiple science licenses, experience in co-teaching special ed ICT classes and is much more qualified to support and supervise me.
Final medical memo issued by DOE- deeming me fit for service (attacnmen 15)

It is my understanding that the New York City, Department of Education administrators in the system widely and arbitrarily mis-use State Law 2568 as a retaliatory tool to harass and intimidate teachers. The union, United Federation of Teachers is probably aware of this ongoing practice and has not stopped it. This needs to be investigated and stopped.

I am filing this complaint to ensure that :
1) I am not harassed and retaliated against by administration or the Union for expressing my views and for asking for transparency in school policy, hiring and decision making.
2) I am filing this complaint so that I am given the support I need and have requested from science supervisor Ms. Nam. I want to ensure that going forward in a co-teaching environment all the responsibility is not placed on me. I want administration to operate in a respectful, fair, congenial and collaborative manner with me. I don't want to be overlooked for any compensation time positions that I apply for. Most importantly, I want to feel safe and not feel that I constantly have a target on my back , not sure of when administration is going to call me in again for another disciplinary meeting, or write me up, without first engaging in a collaborative conversation with me.
3) I don't want administration to file 2568s and other disciplinary action against me for using sick days from my CAR bank where I have almost 120 days in the bank.

**Supporting Documentation**

Attachment_1-Oct._2021_school_culture_pereservation_meeting_and_ICT_co-teaching_class.pdf
Attachment_2.pdf
Attachment_3.pdf
Attachment_4.pdf
Attachment_5.pdf
Attachment_6.pdf
Attachment_7.pdf
Attachment_8.pdf
Attachment_9.pdf
Attachment_10.pdf

## Declaration

**Based on the information contained in this form, I charge the herein named respondent(s) with an unlawful discriminatory practice, in violation of the New York State Human Rights Law.**

**I have not filed any other civil action, nor do I have an action pending before any administrative agency, under any state or local law, based upon this same unlawful discriminatory practice. (If you have another action pending and still wish to file, please contact our office to discuss.)**

**Please initial:**

SV

**I affirm under penalties of perjury, that I am the complainant herein; that I have read (or had read to me) the foregoing complaint and know the content thereof; that the same is true of my own knowledge except as to the matters therein stated on information and belief; and that as to those matters, I believe the same to be true.**

Shreedevi Vora

## Additional information

**Your contact information**

**Email Address**

shreemvora@yahoo.com

**Phone Number**

201 -295-1941

**Mobile Phone**

917 808 8733

## Special needs

**I am in need of:**

Accommodations for a disability

**Please specify accommodation(s) needed:**

Supervision by assistant principal of science Jimyung Nam, not teach ICT classes, teach electives instead and a comp time position, not get penalized for taking sick days for mental and physical health needs

## Settlement/Conciliation

**To settle this complaint, I would accept:**

I want:
the harassment and discrimination as it relates to the ICT special co-teaching class to stop, I do not want to teach ICT any more due to the continued pressure being placed on me by newly hired assistant principal Lafluer King who does not want to place any responsibility for instructional design and delivery on my co-teacher.
I want to be supervised and supported by content assistant principal Jimyung Nam
I want a compensation time position of dean that I am going to apply for (I have done this before at my former school)
I don't want to be penalized for taking sick days or leave for mental, emotional and physical well being. I have around 120 days in my sick bank. I want all of these days to be credited to me when I retire.

## Prior complaint

**Did you report or complain about the discrimination to someone else?**

Yes

**Date you reported or complained about discrimination:**

01/10/2022

**How exactly did you complain about the discrimination? (To whom did you complain?)**

Please refer to narrative and attachments. Complained to school and union representatives and district leadership (superintendent, deputy superintendent, executive superintendent, copied senior DOE legal counsel Lisa Becker)

## Other information

**Were other people treated the same as you? How?**

Yes, only African American male science teacher in school, Mr. Clay Davis. Please refer to narrative and attachment 1.

**Were other people treated better than you? How?**

Yes, my co-teacher Mr. Travis Morin, is never held accountable for any kind of instructional design or delivery in the ICT co-teaching class. All the burden is placed on me. I am the one getting observed and critiqued during classroom observations, not him.

**School Culture Preservation Committee Meeting leading to poor classroom observation report for Shreedevi Vora on 10/26/2021**

1. I have been employed as a Living Environment I (biology) and science teacher by the NYCDOE since 2003 and at the Manhattan Comprehensive Night and Day High School (MCNDHS) since September 2008.

2. I have consistently received satisfactory, highly effective and effective ratings at the school in different domains during observations. I have always been rated satisfactory or effective overall every year of my teaching.

3. The current acting principal is Kristen Erickson. Ms. Erickson was designated as "Assistant Principal in charge" until approximately November 2021, and now she is titled as "Acting Principal."

4. Mr. DiPadova, the UFT chapter leader at MCNDHS, is a good friend of Acting Principal Erickson. Mr. DiPadova worked with Acting Principal Erikson at Health Professions High School for a few years. When Mr. DiPadova came into MCNDHS approximately three years ago, he and Christopher Kremer, the union delegate, in one-on-one conversations with me said they had chosen to follow Acting Principal Erickson to MCNDHS. Mr. DiPadova was hired as a special education teacher at the recommendation of Acting Principal Erickson about 3 years ago from Health Professions High School.

5. On Friday, October 22, 2021, at 2:20 pm, Mr. David DiPadova (the UFT chapter leader of my school) held a " school culture preservation meeting." The goal of this meeting was to discuss how to "preserve the culture of congeniality, trust and professionalism" at the only night and day high school in NYC. Historically, the school has served low income students of color between the ages of 17-21 trying to obtain their New York Regents' diploma. Historically, the administration has embodied the same ethos towards teachers, that teachers embody towards their students who have faced many challenges-conversation before assumed culpability and punishment. The teachers at MCNDHS adapt to the needs of the students and the difficult racial, social, and economic situations they face. Since teachers work in the only school of its kind in New York with these complicated situations, administration in the past has always chosen to converse, rather than immediately punish teachers when they observed something different or a situation in a classroom transpired. These conversations would allow teachers to explain what they know of their students and also allow for future steps that benefit both students and teachers to support students better. During this cultural preservation meeting, the hope and objective was to re-create and sustain a culture of congeniality, trust and respect, and align the school climate closer to the school culture and climate created by Mr. Howard Friedman, founder and retired principal of MCNDHS. One of the components of "congeniality, trust, and professionalism" is prior to initiating disciplinary summons

meetings, and putting letters in the file, school administration having transparent, consistent, and reliable conversations with teachers to understand the context of what leadership may have observed. At the October 22nd meeting, it became clear that teachers of color have been targeted by this administration with disciplinary summons rather than conversation when the administration "perceives abnormal behavior." Teachers who do minor things like eating a cookie in class due to working seven periods without break or checking on a student who may be overdosing are immediately given disciplinary summons. Building a punitive culture that breeds distrust when the school community has already suffered by watching family, classmates, and community members die due to COVID-19 in the last two years creates a hostile work environment and negative learning space for students. A school culture of trust, respect and congeniality between administration, faculty and staff would lead to "people looking forward to coming to work" and wanting to continue working at the school during these difficult times. This kind of a school culture and climate would lead to a dedicated faculty and staff which would then obviously benefit the high risk students that are being served at MCNDHS.   The October 22nd meeting, which would have enabled transparent conversation, reflected the punitive and preferential treatment the new administration promotes. Mr. DiPadova, current chapter leader of the school (became chapter leader by default since the former chapter leader stepped down and no one else wanted to run for the position) had only invited senior day faculty members to join this committee rather than including all teachers, who could give feedback and might have been interested.  I informed Mr. DiPadova that the meeting led by this Committee was an issue "close to my heart" so I would like to participate, and he agreed. However, Mr. DiPadova did not invite all teachers to attend this meeting. Mr. DiPadova, Mr. Clay Davis (the only African American male teacher in the school), Ms. Magaly Lucas, and Mr. Judd Bernard attended this meeting.

6. At the same October 22nd meeting, around 2:40pm, in room 501, Mr. Clay Davis put a letter in my hand that stated that Acting Principal Erickson had summoned him to a disciplinary conference for stepping into the laboratory preparation area which is adjoined to the Science classroom.  Apparently, Mr. Clay Davis was working overtime, covering a class for an absent teacher, had been unable to eat lunch, and opened the door connecting the lab prep room to the classroom to get a cookie from the lab specialist. Acting Principal Erickson, who was walking around with Ms. Raquel Hernandez, Assistant Principal, saw him and reprimanded him. Acting Principal Erickson then called him in for a disciplinary conference.  This incident directed towards another teacher of color was a racialized " trigger" for me since it brought back memories of how then Assistant Principal of the guidance department (now Acting Principal) Erickson had unfairly targeted me and filed corporal punishment allegations against me in February 2020. These charges were filed against me without any conversation with me or with the student or with the student's parents. These allegations were ultimately dismissed by the DOE for being unfounded and the case was closed. During this time period, Acting

Principal Erikson failed to have a single conversation with me to understand what had happened in the classroom and escalated the situation, without full evidence, to a disciplinary summons. In hearing that another teacher of color had also received punishment for a situation that warranted conversation not punishment, the injustice of the administration's behavior triggered me.

7. At the October 22nd school culture preservation meeting, I was visibly upset and emotional. To be transparent about why I was visibly emotional, I informed the faculty present in the room that the incident with Mr. Clay Davis brought back memories of the corporal punishment filed against me. While leaving the classroom, Mr. DiPadova, a friend of Acting Principal Erikson, said let's keep this meeting between us- no one needs to know about this committee, who is on the committee, and what we spoke about. Mr. DiPadova gave no reason for such a statement and it was an odd statement in the context of two teachers of color, out of the very few teachers of color in this school, discussing that they had experienced punishment for necessary adaptive teaching behavior. For over a year this administration has practiced non-transparent and punitive behavior. Coming from Mr. DiPadova, who is meant to be the  UFT Chapter leader, this statement  was hard to ignore since he came to the school at the behest of Acting Principal Erikson. Therefore, I responded to Mr. DiPadova by stating, "I have nothing to hide and I don't care who knows if I am on the committee or what was discussed." It was important to make it clear that I would not be participating in covert conversations or hiding on-going punitive actions towards teachers, and especially teachers of color.

8. Later that same evening, on Friday October 22nd, I again spoke with Mr. DiPadova one on one in the teacher's lounge on the 4th floor at around 7:20pm. I told him that he needed to talk to Acting Principal Erickson on behalf of the teachers as the UFT chapter leader at MCNDHS and ask her to "calm down." I explained that calm down meant that instead of calling teachers for disciplinary conferences, and putting letters in their files, it would be more helpful, congenial, and trust-building to at least have a conversation with the teacher first. I explained to him based on my experience that without shifting this behavior, as all punitive behavior is meant to intimidate, that senior teachers would not be intimidated but rather may start leaving and retiring due to the level of unnecessary and perhaps unfounded pressure being put on faculty during these extraordinarily difficult times. Mr. DiPadova instead of taking my concerns seriously said, "well where are they going to go? It's hard to find a job." At this point, we were both visibly exasperated, and I did not understand why as a UFT Chapter leader at MCNDHS he was not supporting teachers. In response to his comment, I said that I would not be silenced- and "what was Kristin Erickson going to do, start rating teachers "ineffective?" He asked me why everyone was complaining to him and I clarified to him again that it was because he was Chapter leader and had a history with Kristin Erickson. He suggested maybe I should speak with Acting Principal Erickson one on one, the very thing the Acting Principal showed no interest in doing with teachers. I informed him that

given what had transpired with Mr. Clay Davis, I did not feel safe talking with her one on one and that she might put a letter in my file. During this conversation, I also shared with Mr. DiPadova that Acting Principal Erickson had been recruited and groomed by the Principal on terminal leave Michael Toise, therefore faculty and staff were expecting some continuity in the overall management of this only night and day high school in New York CIty.  As our conversation continued I tried to explain to Mr. DiPadova that if Acting Principal Erikson continues to use her power to punish teachers rather than working with teachers, it will continue to create a hostile working environment for everyone. Long standing teachers at this school have always shown a willingness to work with administrators who show interest and concern in how teachers are navigating testing requirements, the personal challenges that students face, and the on-going events in the world that affect our ability to teach. I suggested to Mr. DiPadova that if Acting Principal Erikson manages the staff warmly and congenially, she will earn a lot of loyalty and respect and this will make her tenure as principal in the school pleasant. The student population at MCNDHS as he knows is very different from the student body at HPHS and as all teaching research has shown teachers need to adapt to student needs.  I informed him that all the complex readings and strategies that were being introduced and discussed at the Monday faculty meetings did not apply to a transfer high school where students were being admitted at different times of the academic year, were already behind academically, were english language learners and over-age under credited students, several of whom had IEPs.  It was the priority of the faculty that students learned english, were academically caught up, and prepared for the Regents exams in an effort to help them graduate with the Regents diploma so that they can move on with their after school college and career plans. Mr. DiPadova did not seem to understand this even though the MCNDHS as a school has carried out this work and mission successfully for over 30 years now.

9.  The October 22nd school culture preservation meeting was on a Friday. The following week, on Tuesday, October 26th, 2021, Acting Principal Erikson came to my ICT Living Environment Class (special education, co-teaching class) to conduct an informal unannounced observation. This observation started during the last 22 minutes of a 1 hour 33 minute class. There were five students in the class on a table with Mr. Travis Morin. I was sitting at the front of the room by the white board.  Acting Principal Erikson sat by the front door and began taking notes. I got up from my chair, greeted Acting Principal Erikson and informed her      that the lesson plan had been modified to incorporate an activity that Mr. Travis Morin would be leading. She stood up and took photos of the white board. She sat back down. I continued to sit at the front of the class observing my co-teacher and listening to the five students. One student received a text message and went out of the class. I followed the student and asked him to come back to class and pay attention.

10.  This is the first time in the history of MCNDHS that night school has had an ICT Living

Environment class. Students IEPs mandate that classrooms have two teachers, both a licensed special education teacher and a licensed general education teacher. In the past, Ms. Raquel Hernandez programmed students in my Living Environment night classes without the support of a special education teacher. For 10 years I had requested having a licensed special education teacher but was never given one, even though that was in violation of the student IEPs.  This year for the first time I was granted a licensed special education teacher for my ICT Living Environment Class.

11. Mr. Travis Morin is a licensed special education teacher who is my co-teacher. Mr. Travis Morin was mentored during his initial years as a teacher at the High School for Health Professions by Acting Principal Erikson.

12. My co-teacher, Mr. Travis Morin, up until October 26th, 2021, had been sick with an illness that prevented him from speaking for 3 weeks. Due to his illness, I had taught the ICT Living Environment without his support in class or with lesson plans. Finally the week of October 26th, his voice was back, and we agreed that it would make sense for him to lead the class. Since the class had only five students, it did not make sense to hoover or intimidate students. I had already created the lesson plan for that day and we modified it together, so I let Mr. Travis Morin lead the class.

13. I had also been observed by the Assistant Principal of Math and Science Anastasia Taavres on 10/8/21 from 3:59pm-4:44pm in my Living Environment ICT class (the co-teacher was absent) and received an observation report composed of effective and highly effective ratings.

14. It is important to note that based on current UFT-DOE agreements, due to the extraordinarily difficult circumstances of the past couple years, if a teacher has been rated effective in the past year and has had one successful observation, there is no need for any additional observations.

15. A couple hours after the observation on October 26th, 2021, Acting Principal Erikson sent me an e-mail informing me that "during my observation of your 12th period Living Environment ICT class, I saw evidence of teaching from your co-teacher. However, for most of the observable time I was present in your class, you sat at your desk. You did not interact with the students or their work during my observation except at the very end when you asked the students about DNA. I found most of the elements of your teaching practice to be ineffective. Please schedule a post observation conference with me to discuss my observation."

16. The NYC ICT standards model outlines that for special education team teaching classes there are 6 team teaching models that could be used. Acting Principal Erikson, who served as a special education assistant principal for years at the High School for Health

Professions, would be aware of these 6 models and the criteria that marks each model.

17. During the October 26th, 2021, class observation, my class reflected two of the ICT team teaching models. One model we employed in my class is called *One Teach, One Assist* where "one teacher leads instruction while the co-teacher circulates providing unobtrusive help as needed." On that same day we also employed the *One Teach, One Observe* method where "while one teacher leads the lesson, the co-teacher collects specific data about the students, the co-teacher, or the environment." I had let Acting Principal Erikson know our teaching plan for the day and had told her that we had modified the teaching lesson plan to allow Mr. Morin to lead an activity as he hadn't taught or led any lessons up until October 26th. Acting Principal Erikson observed both the *One Teach, One Assist,* and the *One Teach, One Observe* methods. I was observing Mr. Morin lead teaching a small group of students after a long inability to use his voice, after we had checked in about modifying our lesson plan. I also was watching the 5 students present in class *unobtrusively* as is suggested by the models. For 5 students having another teacher hovering above them would be uncomfortable.  Mr. Morin, who could not speak very loudly, had the 5 students sitting around a lab table in close proximity and I sat at a distance at which I could hear student questions and Mr. Morin's responses. During those 22 minutes, I got up on 3 different occasions. The first time to greet Acting Principal Erikson, and hand her the lesson plan and activity. The second time to address a student who walked out of the classroom to read a text message. When the student walked out of the classroom, I followed the student and asked them to put their phone away and pay attention to the classwork. The student immediately put their phone away and came back into the classroom. Finally, I got up a third time about halfway through the observation (10 minutes to the end of class), to ask Mr. Morin if he needed assistance and suggested we do a summary activity together, to which he responded the lesson was going fine as is. Obviously, as Mr. Morin and I had already discussed that he would take the lead, I continued with observing Mr. Morin.

18. In a post observation meeting with Acting Principal Erikson the day after the observation on October 27th,  I explained that Mr. Morin had not been teaching for 3 weeks due to voice loss and that I had modified my lesson plan to allow Mr. Morin to lead in teaching a DNA related activity that he is comfortable with to help him get re-adjusted to the classroom. I requested that Acting Principal Erikson not write the observation report for me that day as I was not meant to teach during that period, so she had not observed me teaching, as was planned for that day. I thought this request to Acting Principal Erikson was reasonable because at the professional development meeting in September 2021 in front of 40-50 faculty members, Acting Principal Erikson publicly stated that if she was observing a class that did not go well, she would not write the report and observe the class another time because as is normal with teaching there are bad days and sometimes things go awry.   Yet Acting Principal Erickson demonstrated no understanding or compassion and insisted that she would write the report rating me

"ineffective" in most domains.  At this point I informed her that this was "very unfair" and that I would not sign the observation report to which Ms. Erickson responded—"you can write a rebuttal" and then disrespectfully dismissed me from her office by snapping "good night Ms. Vora"

19. Given that I was employing at minimum 2 ICT approved models of co-teaching and Acting Principal Erikson had said she would not write a report based on one-off poor observations, her decision to write a report on me came into suspicion.  Based on the patterns of treatment towards teachers of color, the fact that I had already been observed during the same month and received effective ratings, the fact that I used 2 ICT teaching models, and that Acting Principal Erikson herself said she did not believe in writing reports based on one-off observations, I believe that Acting Principal Erikson deliberately wrote the report as a form of retaliation for the information conveyed to her from the prior week's culture preservation meeting. During my observation on 10/8/2021 Ms. Anastasia Taavres had given me all highly effectives and effectives based on the Danielson Rubric. It makes no sense to waste principal resources or time on another observation within a few weeks based on the report I received. This analysis, in addition to Acting Principal Erikson's responses to the one other Black teacher at the school, leads me to believe that I have been targeted and discriminated against for my race as well as for being vocal about school policies and being involved in union committees.

20. It simply does not make sense to observe me a few weeks after I have been observed and received highly effective and effective on every rubric marker. It does not make sense to ignore the 2 relevant ICT models employed in my classroom to mark me as ineffective. And it does not make sense to rate my teaching when I am not teaching but observing a co-teacher and assisting his classroom management. None of these decisions make sense unless we consider that I have been outspoken in the union about Acting Principal Erikson's punitive model towards teachers and that ultimately I am a woman of color immigrant teacher. Acting Principal Erikson's behavior is suspect and tainted with what seems to be retaliation and discrimination.

21. At the October 27th, 2021, post observation follow-up meeting, Acting Principal Erikson recommended that I observe other ICT co-teaching models and that I work with Ms. Raquel Hernandez, special education assistant principal on a weekly basis for "special education" ICT models and strategies.  I informed Acting Principal Erikson that I was uncomfortable working with Ms. Raquel Hernandez. I was uncomfortable working with Ms. Raquel Hernandez because she has asked me to sign inaccurate language for students' IEPs which I had protested in the past, including modifying lesson plans for students with disabilities even though I did not have the appropriate licensing to do that. In addition, Ms. Raquel Hernandez had, on another occasion, yelled at me in front of students during a regents exam.   These experiences with Ms. Raquel Hernandez suggested that she was not an ideal person for me to work with. As an alternative, I

suggested that the best form of support for me would be to form a teacher group that included Mr. Morin, the licensed special education co-teacher, Ms. Nam, the science department coordinator and a living teacher in order for us to design lessons and activities for the ICT Living Environment class. In response, Acting Principal Erikson said I could work with these teachers on "my own time" and she was going to recommend I work with Ms. Raquel Hernandez despite my statement that that would not help train me for special education co-teaching environments. I informed the chapter leader Mr. DiPadova that I had requested a group that comprised Mr. Morin, Ms. Nam and I to design lesson plans suited for the ICT Living Environment class and this would be the best form of support for me to teach the ICT Living Environment class effectively.  I further stated that the school had $700,000.00 extra funding, some of which could be utilized towards "curriculum development". Mr. DiPadova did not like this suggestion and informed me that an ICT class was more about "strategy than content" and no funds were required to be spent on curriculum development.  When I received no support for the suggestion of forming a group to write lessons for my ICT Living environment class from Ms. Erickson or Mr. DIPadova, I offered another suggestion, knowing that Acting Principal Erikson had worked as a special education teacher  and assistant principal herself, I offered that I could show my lesson plans to her each week and she could suggest special education modifications and strategies so she would know what is going on when she came into my class.  I further informed her that if she did not have time, I could work with the coordinator of the special education department Ms. Sasha Shyamelberg who has a special education license and actively teaches ICT classes. Ms. Erickson said she would get back to me, but she didn't. During our follow-up meeting Acting Principal Erikson did not ask me questions about which ICT models I was using, how the class is typically run, why Mr. Morin was doing the lead teaching that day, or how the class prior to the 22 minutes she observed had been taught. For Acting Principal Erikson to understand whether or not I was meeting ICT models, she would have needed to ask me some questions, which she failed to do.

22. After the October 27th,2021 follow-up meeting, I received e-mails from Ms. Hernandez pressuring me to meet with her during my only preparation period and my lunch period. These are the only 2 periods I have since I am teaching 6 periods this semester at the request of Acting Principal Erikson. District representative Ms. Patricia Crispino informed me that no meetings are to be conducted, mandated, or recommended during a teacher's preparation and lunch period based on my UFT contract. As I am required to have lunch and preparation periods, I could not partake in the offered options by Ms. Raquel Hernandez. I told Ms. Raquel Hernandez, as I had already told Acting Principal Erikson, that I needed a different kind of support, and this constant emailing was stressful.    Ms. Raquel Hernandez's suggestions were going beyond the recommendations based even on the questionable observation report written by Acting Principal Erikson. Given my prior experience and on-going behavioral patterns with Ms. Raquel Hernandez, I was feeling pressured, anxious and stressed to do things that

seemed out of the bounds of what professional ethics require. I let Ms. Raquel Hernandez know that the "tone of her e-mails and demands were causing me a lot of anxiety."

23. At this point I had tried to communicate patterns of targeted, discriminatory, and unusual behavior to the UFT Chapter Leader, in one-on-one conversations with Acting Principal Erikson, and with Ms. Raquel Hernandez.  I realized that I needed support both for my co-teaching environment, and also for what seemed to be targeted and discriminatory behavior directed at me by the administration.

24. I filed an APPR complaint on November 1, 2021, with the UFT for the unfair observation. This is the first APPR complaint I have ever filed. I did not submit the complaint to Acting Principal Erikson within the designated 5 day period, therefore, the UFT could not proceed to escalate the complaint to an independent arbitrator.

25. On November 18, 2021, I asked the District Representative Ms. Patricia Crispino to contact Acting Principal Erikson for a 3-way meeting to request that Acting Principal Erikson consider removing the unfair observation report from my file and to give me the support that I had requested to teach the ICT class.  District Representative Ms. Patricia Crispino reached out to Acting Principal Erikson via phone to request a 3-way meeting and Acting Principal Erikson refused to meet.

26. In November 2021, I also reached out to Special UFT representative Parneice Richardson to see if I could brainstorm any other ways to handle this situation. Special UFT Representative Parneice Richardson during this call shared with me that an evaluator (in this case Acting Principal Erikson) is not supposed to observe two teachers and write up two observations simultaneously. Special UFT Representative Parneice Richardson also mentioned to me that perhaps Acting Principal Erikson thought I was purposefully "disrespecting" her by not getting out of my chair. I felt shocked and confused at this suggestion. The assumption that one must get out of their chair to be a good teacher in this scenario was ableist, and yet I also had no intention of disrespecting Acting Principal Erikson. I followed-up by speaking to Acting Principal Erikson in her office and attempted to apologize for me not getting out of my chair was taken as a direct action to disrespect her. I was in my chair because it was a small class where I had agreed to allow Mr. Morin to lead teach and to observe him.

27. After conversations with UFT representatives, beyond the failures of Acting Principal Erikson to account for ICT teaching models in my class, she also observed my co-teacher Mr. Travis Morin and I at the same time and wrote observations for both of us in violation of observation policies. Acting Principal Erikson wrote a good observation for my co-teacher Mr. Travis Morin and a bad one for me. Yet, both these observations could not have taken place at the same time, according to the standards Acting Principal

Erikson was supposed to follow.   UFT District Representative Ms. Patricia Crispino reached out to Acting Principal Erikson for a meeting regarding the observation and informed me via e-mail that Acting Principal Erikson had refused to meet.

28. I had complained to UFT Chapter Leader Mr. DiPadova about Acting Principal Erikson's punitive behavior and stated to him, "what is she going to do, rate teachers as ineffective" on October 22nd. After that, I received an ineffective rating two workdays later on October 26th. While UFT Chapter Leader Mr. DiPadova had encouraged me to speak to Acting Principal Erikson one-on-one, she refused every attempt I made for a mediated conversation after October 27th. In addition, it is not clear why I underwent a second observation so close in time to my October 8th observation. It was not clear why Acting Principal Erikson failed to follow observation standards such as not observing two teachers at once and considering ICT models that may be employed in co-teaching environments. The on-going pressure by Assistant Principal Raquel Hernandez to engage in strategies beyond the scope of either the observation report or my professional requirements is also troubling. These behaviors together amounted to pressure and harassment.

29. The pattern was depicted again on December 16, 2021, by Assistant Principal Raquel Hernandez. I had emailed absent@mcndhs.com to let the school know I was having COVID-19 symptoms again, and after having COVID-19 in March 2020, would be out sick as a precaution. I had also sent an email outlining what would be happening for the next 2 days (December 16th and 17th, 2021) in each period I would be missing. The structure of the email outlining what was needed in each period is the same email structure I have used for over 5 years without any feedback. In addition, I have seen emails from my co-teacher Mr. Travis Morin when he called out sick and they followed a similar format. Yet in sarcastic and hostile response to my sickness related absence email, Ms. Raquel Hernandez cc'ed all the other administrators in the school and demanded that I be more specific in what needs to be done in each period and gave me an outlined format. This format was never suggested to my co-teacher or me prior to this moment. Following my response, Acting Principal Erikson then sent the email out to the entire faculty about an "absent" e-mail format.

30. For every minute action I have taken, there has been a disproportionate and targeted reaction. Even the absence email format that got sent to all the faculty, was only done after I pointed out that faculty had never been requested to use this structure before and they had not required Mr. Morin or other teachers that I am aware of to use this structure. I had already experienced targeted behavior in the past for requesting more personal protective equipment and spacing for in person meetings due to COVID-19. For example, in September 2021, I had suggested to Mr. DiPadova that instead of having faculty meetings in the auditorium, we should zoom in from our classrooms to keep one another protected. Mr. DiPadova said he discussed this with Acting Principal Erikson at a

consultative committee meeting. According to Mr. DiPadova, acting principal Erickson insisted we should have in person meetings on Mondays and because everyone was vaccinated and therefore safe. Since I was in the first round of being infected and sick with COVID-19 in March 2020, I have been extra cautious. I began sitting by the window during faculty meetings to stay within the airflow. I, and one other teacher, always sit in the same spot near the window in the auditorium. In December 2021, after the escalated targeting that I have described above, after learning about the new Omicorn variant of COVID-19, that window was blocked by SMARTboards with no reason given for why airflow was being restricted. This action of blocking windows while seemingly innocuous, again does not make sense in the context of a more infectious COVID-19 variant and airflow and distancing being strong protective factors. It is only when recognizing the added context that I typically sit by that window, have made concerted efforts to be more protective about COVID-19, and have been targeted by Acting Principal Erikson that this action can be seen in its full light.

31. The intensity and scale of this retaliatory behavior has increased after I revealed to UFT Chair Leader Mr. DiPadova that Acting Principal Erikson's behavior has been targeted towards teachers of color and is punitive in nature on October 22nd, 2021.

32. Due to multiple incidents and patterns, I believe I am being retaliated against by my school administration for my protected activities, like speaking out at a union school culture preservation meeting and for voicing my opinions on school safety protocols related to COVID and at school faculty meetings on Mondays.



# ANNUAL PROFESSIONAL PERFORMANCE REVIEW (APPR)
## TEACHER OBSERVATION REPORT

**Teacher Name:** Shreedevi Vora          **Teacher ID:**          0946101

**School Year:**     2021-2022          **School Name/DBN:** 02M575-Manhattan Comprehensive Night and Day High School

## CLASSROOM OBSERVATION (OBS):

In each observation, all components for which there is observed evidence must be rated. Each form must contain lesson-specific evidence for each of the components observed during a classroom observation.

This observation was: (check one)

☐ **Formal Observation (full period)**          ☒ **Informal Observation (15 minutes minimum)**

Date of Observation: 10/26/2021          Time/Period: 4:22/period 12

| Component | Ratings |
|---|---|
| *1a (obs): Demonstrating knowledge of content and pedagogy*<br>This lesson was on the structure of DNA.  This is an important concept in Living Environment.<br>During the observation period, you sat at a teacher's desk for almost the entire time. | 1- Ineffective |
| *1e (obs): Designing coherent instruction*<br>AIM: How is the DNA structured?<br>Do Now: Explain how genetic information is organized.  Although I did not observe this, the do now was on the handout and in the lesson plan.<br>The handout included different prompts in which students could explore the topic of DNA.<br>There were no time allotments on the lesson plan. | 3- Effective |
| *2a: Creating an environment of respect and rapport*<br>You had almost no interaction with the students. | 1- Ineffective |
| *2d: Managing student behavior*<br>One student got up with his mask down and on his phone and left the class.  At this point, you got up from the desk and followed him to the door.  You went back to sitting behind the desk. | 2- Developing |
| *3b: Using questioning and discussion techniques*<br>You did not pose questions to the students during the observation. After Mr. Morin asked the class "What is DNA?"  You stated from your desk, "Guys we went over it two days in a row." | 1- Ineffective |

Last Revised: 10/29/21 11:53:43 AM By kericks2

| | |
|---|---|
| *3c: Engaging students in learning*<br>Students were engaged in an activity with Mr. Morin.<br>You did not engage students in any activity. | 1- Ineffective |
| *3d: Using assessment in instruction*<br>You did not provide students with feedback during the observation.<br>You did not check for understanding or monitor their work. | 1- Ineffective |
| *4e (obs): Growing and developing professionally* | N/A |

Teacher ID 0946101 _____        Teacher Name Shreedevi Vora _____

## ASSESSMENT OF PREPARATION AND PROFESSIONALISM (P&P):

In this section of the form, evaluators should rate evidence for components 1a, 1e, and 4e that was observed within fifteen (15) school days prior to the classroom observation as part of an assessment of a teacher's preparation and professionalism. Each form must contain teacher-specific evidence for each of the components observed.

| Component | Ratings |
|---|---|
| 1a (p&p): Demonstrating knowledge of content and pedagogy | N/A |
| 1e (p&p): Designing coherent instruction | N/A |
| 4e (p&p): Growing and developing professionally | N/A |

**Additional Evaluator Notes (please attach more pages, as necessary):**
This lesson was on the structure of DNA, an important topic in Living Environment.
Soon after the observation, I sent you an email with observation feedback.   See content of email below:

"During my observation of your 12th period Living Environment ICT class, I saw evidence of teaching from your co-teacher.  However, for most of the observable time I was present in your class, you sat at a desk. You did not interact with the students and their work during my observation except at the very end when you asked the students about DNA.
I found most elements of your teaching practice to be ineffective.  Please schedule a post observation conference with me to discuss my observation."

The next evening (10-27-21), you stopped by my office for your post observation conference.  I stated that it would be best to schedule one and you stated that "I just want to get it over with."  I complied.
During our post observation meeting, I explained that I did not observe you interacting with the students during my observation.  You sat at your desk for almost the entire duration of the observation.  You explained that Travis, your co-teacher, had no voice for awhile and you were giving him an opportunity to teach.  You stated that you have no planning time together.  I stated that Tuesdays there is common planning time in the schedule.  You went on to explain that you put the aim, do now, and objectives on the board and that Travis placed his changes in red on the lesson plan itself.  You stated that you were still figuring out the ICT model. You stated that your were giving the Special Education teacher the opportunity to teach.  You explained that during the ICT professional development meeting held by AP Hernandez at the beginning of the school year, AP Hernandez said to do that.

I recommended that you visit the ICT team of Shlyamberg and Holstein and/or visit the ICT team of Dipadova and Kremer.  You stated that these teams have been working together for a long time.  I explained that I wanted you to see experienced ICT teams to see best practices with ICT models.
I also recommended that you meet with Ms. Hernandez on a weekly basis for additional support with the ICT model of instruction.

You asked me to not to write the report of this observation.  I explained that I would be writing the report and that many of the components would be rated ineffective.   I also stated that this is just one observation on one day and does not necessarily reflect your overall instructional practice.  You stated a number of times that you would not be signing this report.

Teacher ID 0946101_____        Teacher Name Shreedevi Vora_____

**Teacher's  signature:** _____        **Date**_____
*(I have read and received a copy of the above and understand that a copy will be placed in my file.)*

**Evaluator's name (print):** Kristin Erickson_____

**Evaluator's signature:** _____        **Date**_____

tomorrow

| | |
|---|---|
| From: | Patricia Crispino (pcrispino@uft.org) |
| To: | shreemvora@yahoo.com |
| Date: | Thursday, December 2, 2021, 09:04 PM EST |

Hello Shree,
I spoke with the Principal, and she does not want to meet.
I'm sorry.
Patty



Our kids deserve smaller class sizes.
Sign and share our petition.

The views, opinions, and judgments expressed in this message are solely those of the author. The message contents have not been reviewed or approved by the UFT.

## Please confirm- UFT unable to help

From:  Shree Vora (shreemvora@yahoo.com)

To:    pcrispino@uft.org; prichardson@uft.org; mmulgrew@uft.org; msill@uft.org

Date:  Monday, December 6, 2021, 12:05 PM EST

Good morning Ms. Crispino- thank you for reaching out to "Acting Principal " Kristin Erickson telephonically last week.

I made an error and did not hand In the. The APPR complaint to Ms.. Erickson within the designated 5 day period. I was not aware of this since I have never filed an APPR complaint in the past.

Subsequently Ms.. Richardson advised me that I could approach you or a special representative in the union for a joint meeting with Ms.. Erickson to resolve this " very unfair observation"- where she has committed several evaluator violations.  Thank you Ms. Richardson for all your help and advise along the way.

Per your email below Ms. Crispino- Ms. Erickson has refused to meet! Is she allowed to "refuse a meeting being requested by a violated union member"?
And the UFT cannot do anything about this?


Patty,  even though you insist that we MUST go through the local chapter leader-I am not confident that local chapter leader David DiPadova will represent me fully or objectively
due to his friendship with Ms. Erickson.


President Mulgrew
Please confirm that with all the UFTdues I pay- the UFT
Is unable to send  a special, neutral representative to help me ?

At this point I would not want Pat Crispino or David DiPadova to represent me. I would like a neutral, independent special representative from the UFT to represent me in a meeting with Ms. Erickson . When and how can this be arranged?


Please feel free to forward this email to whomever is in charge to reach out to me. Email is the best way to communicate with me.

Thank you,
Ms. Vora




Sent from Yahoo Mail on Android


  ----- Forwarded Message -----
  **From:** "Patricia Crispino" <pcrispino@uft.org>
  **To:** "Shree Vora" <shreemvora@yahoo.com>

  **Sent:** Thu, Dec 2, 2021 at 9:04 PM
  **Subject:** tomorrow

Hello Shree,
I spoke with the Principal, and she does not want to meet.
I'm sorry.
Patty



## Our kids deserve smaller class sizes.
## Sign and share our petition.

The views, opinions, and judgments expressed in this message are solely those of the author. The message contents have not been reviewed or approved by the UFT.



**Department of Education**

LAURA HEMANS BRANTLEY, ESQ.
*Executive Director*
Office of Equal Opportunity & Diversity Management

January 10, 2022

**RE: OEO Case# C-1236/21**

Via Email: shree.vora@mcndhs.com
ShreeDevi Vora
6009 Kennedy Blvd E #A4
West New York, NJ 07093

Dear Shreedevi Vora:

The Department of Education's Office of Equal Opportunity & Diversity Management ("OEO") is in receipt of information indicating that you may have a complaint of discrimination or sexual harassment. OEO investigates allegations of discrimination and sexual harassment pursuant to Chancellor's Regulation A-830.  Chancellor's Regulation A-830 is available for review at www.schools.nyc.gov.  Please review the regulation for a comprehensive description of the policy and procedures for filing internal complaints.

If you believe that you are being discriminated against or harassed due to your status as a member of a protected class (e.g., race, religion, gender, sexual orientation, disability, sexual harassment, etc.), please contact me directly by phone at (929) 552-7244 or by email at NBhimsen@schools.nyc.gov.

If we do not hear from you within **10** days of this notice letter, OEO may be unable to proceed further with the matter and your case may be closed.

Sincerely,

Nirmala Bhimsen
Equal Opportunity Complaint Investigator
Office of Equal Opportunity & Diversity Management

**GLASS HARLOW & HOGROGIAN LLP**
ATTORNEYS AND COUNSELORS AT LAW
A Limited Liability Partnership
85 BROAD STREET, 16TH FLOOR @ WEWORK
NEW YORK, NY 10004
Phone No. 212-537-6859
Fax No. 845-510-2219
E-mail: bglass@ghnylaw.com

*Bryan D. Glass*
Partner

January 6, 2022

*Via email protond@schools.nyc.gov*
Paul Rotondo
Superintendent of Transfer Schools
198 Forsyth Street
New York, NY 10002

**Re:     On behalf of teacher Shreedevi Vora**

Dear Superintendent Rotondo:

This firm has been contacted by teacher Shreedevi Vora regarding recent adverse actions she has been subjected to at her school.  Ms. Vora has been assigned as a Living Environment (biology) teacher at the Manhattan Comprehensive Night and Day High School (MCNDHS) since September 2008.

Ms. Vora is respectfully requesting to schedule a meeting with you directly (and not with her local school administration) at your earliest convenience to discuss if you can help facilitate the resolution of several issues that have arisen at her school. Specifically, Ms. Vora is seeking the following:

1) Approval of her preferences for Spring 2022 and going forward. Ms. Vora would like to continue teaching the night schedule --however, with NO ICT Living Environment classes. The school is currently programming faculty teaching programs for the upcoming Spring 2022 semester. Ms. Vora submitted her schedule and teaching preferences on Monday, January 3, 2022. She is the most senior licensed Living Environment teacher in the school and therefore, should be granted her preferences. In addition, the Fall 2021-22 semester is the first time in the history of MCNDHS that an ICT Living Environment co-teaching class is being taught. Going forward, it would be most beneficial for students with Living Environment IEPs to be programmed in the day school where they would receive ICT co-teaching support in the classroom. Hiring additional special education teachers for the day school and incorporating the Living Environment ICT classes during the day would be most beneficial and fair for students with Living Environment

1

IEPs. It would also be easier for the school to hire special education licensed teachers for the day school since hiring special education teachers for night school has been challenging.

2) Ms. Vora has been teaching the night school over age under credited and ELL student population for several years.  Therefore, she requests that Acting Principal Erickson and other school administrators listen, respect, trust, and give her the support that she may ask for to best manage and prepare this high risk night school student population for the Living Environment Regents exams.

3) Removal of an unfair observation report from her personnel file, dated October 29, 2021, rated with several ineffectives. On October 26, 2021, Ms. Erickson observed Ms. Vora and her co-teacher simultaneously for an ICT Living Environment class under extenuating circumstances. Ms. Vora's co-teacher had suffered a voice loss for several weeks and the lesson was modified to allow him to lead the class that day. Therefore, when Ms. Erickson walked in, during the final 22 minutes of the class, she rated Ms. Vora when she was not teaching but "unobtrusively observing" the co-teacher and assisting his classroom management of a very small group of students. Even though Ms. Vora repeatedly explained the extenuating circumstances to Ms. Erickson during a post observation conference, Ms.  Erickson dismissed her and proceeded to write an observation report for Ms. Vora with several ineffective ratings.

According to UFT special representative Ms. Parniece Richardson, an evaluator is not supposed to observe, evaluate, and write observation reports for two co-teachers simultaneously. An APPR complaint was filed with the Union; however, Ms. Vora did not give the complaint to Ms.  Erickson within the designated 5 day period. Therefore, the Union was unable to escalate it to an independent arbitrator. Ms. Vora has received consistently highly effective and effective ratings in the past, including an observation conducted as recently as October 8, 2021.

4) Avoid collaborative work with Assistant Principal Raquel Hernandez based on her hostile attitude towards Ms. Vora. Following the 22 minute observation of the ICT Living Environment class on October 26, 2021, Ms. Erickson recommended that Ms. Vora observe other ICT co-teaching models and work with Ms. Hernandez, special education and social studies Assistant Principal, on a weekly basis for information on "special education" ICT models and strategies. Ms. Vora explained to Ms. Erikson that she was uncomfortable working with Ms. Hernandez.  Indeed, Ms. Hernandez has asked Ms. Vora to sign specific legal language for students with IEPs, although Ms. Vora did not have a special education licensed co-teacher in the classroom and had no control over the IEP students being programmed in her class.  Ms. Vora  had protested that she was asked to sign inaccurate language for students in the past, including modifying lesson plans and developing specific materials for students with disabilities, even though Ms. Vora was not offered support by a special education licensed teacher to help with these modifications. Ms. Raquel Hernandez also had, on another occasion, yelled at Ms. Vora in front of students during a regents exam. In addition, on December 16, 2021, after Ms. Vora had emailed

absent@mcndhs.com to let the school know she was having COVID symptoms again, Ms. Hernandez responded with a sarcastic, threatening and hostile email demanding that Ms. Vora send emails that follow a certain format and copied all other school administrators to it.

As an alternative, Ms. Vora suggested to Ms. Erickson that the best type of support for the ICT Living Environment class would be to form a teacher group that includes the licensed special education co-teacher, Ms. Nam, the Science Department Coordinator and also a Living Environment teacher (who is very knowledgeable on different NGSS and CCLS standards, and expressed an interest to participate in the group) to design lessons and activities for the ICT Living Environment class. Ms. Erickson informed Ms. Vora that she could work with the other teachers on her own time, but that she still wanted her to meet with Assistant Principal Hernandez on a weekly basis, even though Ms. Vora is already teaching 6 periods this semester at Ms. Erickson's request. This lack of  support demoralized Ms. Vora and caused her anxiety.

5) A change in administration and Ms. Erickson's management practices towards Ms. Vora, i.e., to have professional and collaborative conversations and check-ins, prior to jumping to conclusions, putting letters in files, writing bad and unfair observation reports and summoning to disciplinary conferences.

We look forward to hearing from you in anticipated cooperation so that Ms. Vora may work collaboratively to solve these issues in a manner that is fair and benefits students, and optimizes Ms. Vora's morale.

Sincerely,

*s/ Bryan Glass*
Bryan D. Glass, Esq.

C:      Tlisant@schools.nyc.gov
        jsulliv3@schools.nyc.gov


**TRANSFER
SCHOOLS**



Office of The Superintendent of Citywide Transfer High Schools
198 Forsyth Street New York, N.Y. 10002   (646) 654 –1261
Paul Rotondo, Superintendent / John Sullivan, Deputy Superintendent
January 19, 2022

*Via email Svora2@schools.nyc.gov*

Vora Shreedevi
Biology – General Science Teacher – EIS 0820786
Manhattan Comprehensive Night and Day High School – 02M575

Dear Ms. Vora,

This letter is a written response to the conference you requested in a letter I received on your
behalf from your Attorney Bryan Glass. This conference between you and I was conducted
virtually via Zoom on Friday, January 14, 2022.  Present also at the conference was Deputy
Superintendent John Sullivan as he too, was the recipient of your email and letter request.

At this conference you presented a number of concerns and raised a number of issues in which
you requested resolution beyond those provided to you by your rating officer, Principal Erickson.

Your requests included the following items:

1) Immediate and ongoing approval of your teaching preferences which you state include a
   request NOT to teach an Integrated Co-Teaching (ICT) Model Class during the Night
   program.
2) Interim-Acting (I/A) Principal Erickson and other administers should listen, respect, trust
   and give support to best manage and prepare lessons for the high risk student population
   taking the Living Environment Regents.
3) Removal of an unfair observation report dated October 29, 2021.
4) Avoid collaborative work with Assistant Principal (A.P.) Raquel Hernandez.
5) A change in administration and Ms. Erickson's management practices so that they are
   professional and collaborative and provide you with "check-ins" prior to "jumping to
   conclusions" when dealing with you.

I want to thank you for taking time to discuss these items with me and for sharing with me your
observations and concerns over some of the transitions that are taking place at Manhattan
Comprehensive Night and Day High School (MCNDHS). As we discussed during this
conference, some of the items you raise involve your misunderstanding about what is permitted
and what is not.  Other items, however, can be addressed but required a closer look.  I am glad to
say that I have completed this task and I am prepared to inform you about what resolutions I
have put in place.

Focus                         Feedback                      Follow Through





Office of The Superintendent of Citywide Transfer High Schools
198 Forsyth Street New York, N.Y. 10002   (646) 654 –1261
Paul Rotondo, Superintendent / John Sullivan, Deputy Superintendent

I have heard your comments on both **items 2 and 5** listed above and can inform you that under no circumstance should any of our school leaders interact, engage or deal with employees in any way that is not considered professional. To this end, I have instructed my team to meet with and remind the administration of the school, my expectation, that all staff are to be provided with an opportunity to share their input, and that they are to be treated with respect, trust and professionalism. Additionally, I will address how Ms. Erickson manages and supervises you, being sure to remind her that her evaluations of you remain fair, professional and based on a set of clear expectations shared with you and with all staff members. Included within this work will be job embedded support for teacher evaluations which will be conducted by my advance teaching lead and is required of all teacher evaluators by NY State's Education Department.

Items:

**1)** Your request for immediate approval going forward of your teacher preference to teach Living Environment only in the Night program and not as an ICT model. As teacher preferences are covered under your union's collective bargaining agreement changing the scope and parameter of that agreement is not possible. In other words there are a few things we must consider: a) your license which is Biology and General Science limits you to teach "in-license" courses relative to Biology; Living Environment is such a course. b) Night School is not a separate school within MCNDHS and therefore teachers are on one full day and night program. In addition, students are on one enrollment register and teachers and staff are all part of one school table of organization. c) Teachers may request a teaching preference concerning the subject under their license that they would like to teach in the upcoming program, they do not have the right to request not teaching a course necessary for students such as ICT. In other words, the teacher's preference may not supersede nor dictate the needs of the students we teach.
**Resolution**: Your request for approval of your program to teach Living Environment at Night is approved. However, your request NOT to teach an ICT Living Environment class is denied. This is based on student need and not teacher preference. In fact, at our conference you even remarked that, "There is a deficit of teachers to meet student need at night." Your request to continue teaching in the "Night Program" has been approved by your principal, noting that this preference has been permitted because there is precedence to suggest that although teachers are all on one school table of organization, the school operates as if it were a multi-session high school. Regardless of any teacher's preference they remain preferences, not guaranteed teaching programs. Programming must and will continue to remain based on the needs of students not staff.

**3)** Removal of an unfair teacher observation report dated October 29, 2021. In a review of the mentioned observation report and any other observation report conducted on that day at





Office of The Superintendent of Citywide Transfer High Schools
198 Forsyth Street New York, N.Y. 10002   (646) 654 –1261
Paul Rotondo, Superintendent / John Sullivan, Deputy Superintendent

MCNDHS, I have determined that there were two observations conducted in that period 12 class during that time, both of which did not delineate separate fifteen minute time periods. Further, I noted that there is a UFT contractually negotiated process with the City of New York through which this appeal objection should have been handled and that you failed to make use of that process.

**Resolution:** Your request to have your observation dated October 29, 2021 removed from your evaluation file is approved. The report and its ratings will be deleted and not used for evaluation purposes this year. This decision is based on the fact that two teachers were observed during the same period, in the same class, but there was no clear differentiation made as to the separate fifteen minute intervals used to evaluate each teacher.

Going forward you will be evaluated in upcoming observations by your supervisor (A.P.) and or rating officer (Principal). There is a MINIMUM of two evaluations, that must be conducted for each teacher and as per the collective bargaining agreement the type of those observations was selected by you earlier in the school year and remains, "informal" which requires no prior notification of the observation and a minimum visit of no less than fifteen minutes. Be aware that using this form of resolution for this matter circumvents an agreed upon appeal process between your union and the City of New York. Should you have any further appeals or objections with regard to future evaluations, you must make use of the approved appeal agreement process.

**4)** Avoid collaborative work with Assistant Principal Raquel Hernandez as she has been hostile towards you. At this time I have not found, nor is there evidence to suggest that there is a hostile working environment created by this supervisor nor has the supervisor engaged in requesting anything that violates Chancellor's rules and or policies. A.P. Hernandez is a licensed school building administrator assigned to your school and as such, is qualified to supervise any staff or instructional department within your school. At present, she is an administrator who supervises all teachers and staff, including you, but she is listed as the direct supervisor for both the Social Studies and Special Education Departments at MCNDHS. As part of responsible school leadership, it is customary to help support teachers with areas of need found in evaluations. In your evaluation the need for this type of support was observed and the principal requested that you receive the assistance by meeting with and collaborating with this A.P. Even during our conference you made statements indicating that, "I don't have experience with co-teaching" and "I never received professional development on this (ICT models)."

**Resolution:** I will make certain to remind I/A Principal Erickson of my expectations regarding professional conduct which includes all staff and administration. I am concerned about your request for support regarding your planning and delivery of co-teaching lessons, a requirement for some students with Individualized Educational Programs (IEP). As such, the administrator

**Focus**                    **Feedback**                    **Follow Through**





Office of The Superintendent of Citywide Transfer High Schools
198 Forsyth Street New York, N.Y. 10002   (646) 654 –1261
Paul Rotondo, Superintendent / John Sullivan, Deputy Superintendent

responsible for this type of Special Education support is A.P. Hernandez. Whether this A.P. decides to make use of the "Department Coordinator" you suggest or not, your statement regarding the need for professional development and support makes providing you with such support a necessity. I will direct I/A Principal Erickson to establish time for you to be provided with professional development and support on best practice methods of teaching students with IEPs and teaching in a co-teaching model. Additionally, I will advise your Principal to provide you with any upcoming district or central office professional development workshops on Special Education that she feels appropriate to meet your needs.

Again, I want to thank you for reaching out to me and for taking time to share your concerns about Manhattan Comprehensive Night and Day High School. By providing you with some resolution and guidance I have addressed your concerns and helped support both you and the school administration so that together you may continue to help students succeed.

Sincerely,

Paul Rotondo
Superintendent, Citywide Transfer High Schools

Cc:   Dr. Timothy Lisante, Executive Superintendent
      Principal Kristin Erickson I/A, MCNDHS
      John Sullivan, Deputy Superintendent Citywide Transfer Schools
      Lisa Becker, Senior Field Counsel

**Focus**                    **Feedback**                    **Follow Through**

**GLASS HARLOW & HOGROGIAN LLP**
ATTORNEYS AND COUNSELORS AT LAW
A Limited Liability Partnership
85 BROAD STREET, 16TH FLOOR @ WEWORK
NEW YORK, NY 10004
Phone No. 212-537-6859
Fax No. 845-510-2219
E-mail: bglass@ghnylaw.com

*Bryan D. Glass*
        Partner

                                February 28, 2022

*Via email protond@schools.nyc.gov*
Paul Rotondo
Superintendent of Transfer Schools
198 Forsyth Street
New York, NY 10002

**Re:     On behalf of teacher Shreedevi Vora**

Dear Superintendent Rotondo:

        I represent Ms. Shreedevi Vora, teacher at Manhattan Comprehensive Night & Day High School ("MCNDHS").  I am writing again on Ms. Vora's behalf to follow up regarding the conference resolutions instituted following the zoom conference between you, Deputy Superintendent John Sullivan, and Ms. Vora on, January 14, 2022.  Ms. Vora has advised me that the agreed upon Resolutions Nos. 3 and 4 are not being adhered to by her school administration.

        As stated in your letter dated January 19, 2022, Resolutions Nos. 3 and 4 are as follows:

        No. 3 - "Your request to have your observation dated October 29, 2021 removed from your evaluation file is approved.  The report and its ratings will be deleted and not used for evaluation purposes this year".

        No. 4 - "I am concerned about your request for support regarding your planning and delivery of co-teaching lessons, a requirement for some students with Individualized Educational Programs (IEP). As such, the administrator responsible for this type of Special Education support is A.P. Hernandez.  Whether this A.P. decides to make use of the "Department Coordinator" you suggest or not, your statement regarding the need for professional development and support makes providing you with such support a necessity.  I will direct I/A Principal Erickson to establish a time for you to be provided with professional development and support on best practices and methods of teaching students with IEPs and teaching in a co-teaching model."

                                1

DOE regulations require both co-teachers of a new co-teaching pair to be provided with the professional development jointly. Ms. Vora has been compliant with the directives of your Resolutions and has met with AP Hernandez along with her co-teacher for special education, Mr. Travis Morin, twice. During both of these meetings, Ms. Vora informs us that she was cornered by AP Hernandez.  Instead of providing any professional development in co-teaching models and best practices, AP Hernandez started questioning and harassing Ms. Vora about her lesson plans, student work, and pedagogy.

During the second meeting that AP Hernandez held with Ms. Vora and Mr. Morin, Ms. Vora informs us that AP Hernandez requested that written student responses be provided at the meeting.  In addition, AP Hernandez informed Ms. Vora and the co-teacher that she would like to know what co-teaching models are being used in class so that she is aware of what is going on when she enters the class to "observe".  At this point, Ms. Vora informed AP Hernandez that based on the Resolution No. 3 in your letter, the ICT class was not to be evaluated this school year.  AP Hernandez informed Ms. Vora that she had no knowledge about the letter or its contents.  If Principal Erickson did in fact fail to advise AP Hernandez about the directives to be followed, it is a cause for great concern given her knowledge of Ms. Vora's anxiety about working with AP Hernandez. In fact, Principal Erickson had filed a complaint against AP Hernandez on Ms. Vora's behalf with the DOE's Office of Equal Opportunity ("OEO") on December 17, 2021, since Ms. Hernandez sent Ms. Vora a harassing email requiring her to send emails regarding absences in a certain format not required of the entire faculty.  You were copied on that email Superintendent Rotondo. Ms. Vora informs us that she has made available to the DOE's OEO similar incidents of harassment by AP Hernandez towards her in the past.  Ms. Vora has also documented and made available to the OEO events that occurred prior to and leading up to the October 26, 2021 observation by Principal Erickson.

At both meetings, Ms. Vora informs us that AP Hernandez displayed favoritism towards Mr. Morin and put a lot of pressure on Ms. Vora (general education teacher) yet again, as she had in the previous years. AP Hernandez informed Ms. Vora that Mr. Morin is not her "assistant", and tasks such as making copies need to be equally divided.  In addition, she informed Ms. Vora that the differentiated worksheets Mr. Morin was making for the students "were very time consuming".  She further questioned Ms. Vora on how "grading" was being equally divided. This does not constitute professional development for ICT models and best teaching practices.

Additionally, Ms. Vora informs us that AP Hernandez informed Ms. Vora that Principal Erickson had asked her to meet with Ms. Vora and Mr. Morin on a weekly basis for the ICT Living Environment class for a period of time.  However, the agenda, format, and implementation of these meetings is, based on current school culture, politics and climate and is not  genuine "professional development". Ms. Vora believes these meetings are retaliatory in nature and are still being conducted from the pedagogical vantage point of the unfair observation report you removed from Ms. Vora's personnel file.

In the past, Ms. Ella Scope was brought in by the school to provide professional development to new co-teacher pairs for a period of time.  The same should be done for Ms. Vora

and Mr. Morin so that these sessions focus professionally and objectively on ICT co-teaching models and best practices, as your resolution mentions.

Attached is a physician note for providing an accommodation that Ms. Vora not attend these meetings with AP Hernandez and work instead with AP of Math and Science Jimyung-Nam for any lesson related or pedagogical needs, and with a  special education expert outside the school for professional development on ICT co-teaching models and best practices.

Ms. Vora also asks us to bring to your attention a matter that is unrelated but of importance. Ms. Vora had sent an email to Principal Kristin Erickson on Friday, February 11, 2022 (copied to P. Rotondo, T. Lisanthe and L. Baton) following a faculty meeting held on Monday, February 7, 2022, about school safety and weapons in school.  Ms. Vora had inquired about what protocols were being put in place by administration to address school safety, weapons, and student discipline related incidents She had inquired if the "dean's position" was going to be reinstated. Ms. Vora has not received any response to this email to date.

Ms. Vora also requests that her personnel file be made available to her for review.

Ms. Vora looks forward to a conciliatory resolution of the outstanding issues above, and thank you for your attention to this matter.

Sincerely,

*s/ Bryan Glass*
Bryan D. Glass, Esq.

Attachment

C:      Tlisant@schools.nyc.gov
        jsulliv3@schools.nyc.gov
        LMBecke@schools.nyc.gov



**OSCAR SANDOVAL, M.D., Psychiatry Director**

569 35th Street
Union City, N.J. 07087
Telephone: (201) 866-6970
Fax: (201) 866-7144

February 24, 2022

Paul Rotondo, Superintendent of Transfer Schools
198 Forsyth Street
New York, NY 10002
Via e-mail protond@schools.nyc.gov

**Re:      On behalf of teacher Shreedevi Vora**

Dear superintendent Rotondo:

Ms. Vora is a patient under my psychiatric care and her condition has deteriorated, secondary to the stressful environment that has been imposed on her, since October 2021, by assistant principal Raquel Hernandez.

Ms. Vora has cooperated with the administration of the Manhattan Comprehensive Night & Day High School (MCNDHS) and discussed the ongoing harassment by AP Raquel Hernandez with you, without any resolution on this problem.

Ms. Vora would like to continue teaching her night schedule, but with no ICT Living Environmental classes, which are causing her a great deal of anxiety and altered mood requiring medication. Her Panic Disorder has intensified and Ms. Vora is at a point of a nervous breakdown due to the harassment actions of Ms. Raquel Hernandez.

It is in the best interest of Ms. Vora's mental health, that she stops attending meetings with AP Raquel Hernandez, in order to minimize Ms. Vora's exposure to Ms. Hernandez's bullying.

A recommended solution to improve on the psychodynamics of all parties involved would be for Ms. Vora to receive assistance from a special education expert in professional development on ICT co-teaching models and best practice.

Ms. Vora would be able to work in a less hostile environment if she is allowed to work with I.A. AP of Math and Science Jimjung-Nam.

I am counting on your wisdom in providing Ms. Vora immediate relief, and put in place arrangements to prevent Ms. Vora from suffering a nervous breakdown.

Sincerely yours,

Oscar Sandoval MD
Psychiatrist

cc: Tlisant@schools.nyc.gov
    jsulliv3@schools.nyc.gov





Office of The Superintendent of Citywide Transfer High Schools
198 Forsyth Street New York, N.Y. 10002 (646) 654 –1261
Paul Rotondo, Superintendent / John Sullivan, Deputy Superintendent

March 4, 2022

Dear Attorney Glass,

This letter is a written response to your letter dated February 28, 2022, in which you state that you represent Manhattan Comprehensive Night and Day High School (MCNDHS) teacher, Shreedevi Vora. In this letter you state that Ms. Vora informed you that prior resolutions I provided in a letter dated January 19, 2022, to help address her grievances at the school have not been met. Specifically, you site Resolutions Number 3 and 4 which involve the removal of a disputed prior instructional observation and the ongoing plan for providing Ms. Vora with professional development regarding Special Education instructional models.

**Resolution number 3:** With regard to this concern, I have verified within the NYC DOE Advance system, which is the digital teacher observation system, the fact that the observation in question dated, October 29, 2021, has been removed from the system and will not be used as part of any evaluation for this teacher. Additionally, I have been assured by Principal Erickson that this observation report has also been removed from Ms. Vora's personnel file. Regarding Ms. Vora' s request to review her personnel file, located at the school, she, as are all NYCDOE employees, entitled to conduct such a review and to make copies of any documents that are contained within that file if she so chooses. To set up this review employees are asked to make an appropriate request in writing to the school principal who with the school secretary will establish a scheduled review meeting that does not conflict with any of Ms. Vora's daily teaching duties. Please note that during this review meeting nothing may be added nor removed from the file, but copies may be made of documents that the employee requests. To ensure compliance, the Department requires that a supervisor be present during this review. It should be noted that any adverse "Letter to File" can be permanently removed from the employee's file only following a three (3) year period, after the latest incident referred to in the letter, and provided that disciplinary charges did not follow.

You further state in your letter regarding Resolution number 3, that Ms. Vora informed Assistant Principal Hernandez that I stated that the "ICT class was not to be evaluated this year." I have reviewed my letter and confirmed that I did not indicate any such agreement. Instead what was stated was the following:

Focus                               Feedback                          Follow Through





Office of The Superintendent of Citywide Transfer High Schools
198 Forsyth Street New York, N.Y. 10002   (646) 654 –1261
Paul Rotondo, Superintendent / John Sullivan, Deputy Superintendent

"Going forward you will be evaluated in upcoming observations by your supervisor
(A.P.) and or rating officer (Principal). There is a MINIMUM of two evaluations, that
must be conducted for each teacher and as per the (UFT) collective bargaining agreement
the type of those observations was selected by you earlier in the school year and remains,
"informal" which requires no prior notification of the observation and a minimum visit of
no less than fifteen minutes. Requesting this type of resolution circumvents an agreed
upon process between your union and the City of New York and certainly provided me
with grounds NOT to approve your request. Should you have any further appeals or
objections with regard to future evaluations, you must make use of the approved appeal
agreement process."

**Resolution number 4**: Your letter states that "DOE regulations require co-teaching pairs to be
provided with professional development jointly." Although this may be a practice common to
professional development in many schools it is not an accurate interpretation of what I requested
as a resolution to this particular issue. In fact, it may be a misinterpretation of a policy that
suggests that co-teaching pairs be provided with "common joint planning time." Please know
that this common planning time is a period of time provided to Ms. Vora and her teaching
partner daily. During this time it is expected that both teachers meet and plan for the
development of the lessons they are going to deliver. When I made the request for Ms. Vora to
be provided with professional development around Special Education services, in particular
those involving ICT models, it was directed solely for her benefit and that request was being
made in direct response to Ms. Vora's statements that she "did not have experience with co-
teaching" and that she "never received professional development on ICT models." These
statements reflected Ms. Vora's need for her teaching support, the request is not about
punishment nor retaliation, nor is it reflective of what the needs are of her co-teacher.

Your letter goes on to suggest that A.P. Hernandez (the Special Education Assistant Principal at
Manhattan Comprehensive Night and Day HS) informed Ms. Vora during professional
development time that her Special Education Co-Teacher "is not her assistant and should not be
giving copying duties"… nor should she be "providing differentiated worksheets that are too
time consuming." Although I do agree that these statements do not portray a professional
development conference focused solely on ICT modeling, the statements, if accurate, are
certainly valuable feedback as part of a professional learning experience or co-planning time for
someone who has admitted to "not having experience with co-teaching." Below is a copy of a
suggested agenda for co-teaching planning time. I am providing it to you as a baseline for what
co-teachers should be discussing during such shared planning time.

**Focus**                    **Feedback**                    **Follow Through**





### Office of The Superintendent of Citywide Transfer High Schools

198 Forsyth Street New York, N.Y. 10002   (646) 654 –1261

Paul Rotondo, Superintendent / John Sullivan, Deputy Superintendent

#### Accessible Co-Planning Agenda

**Accessible lesson planning resources are linked throughout**

**Purpose/Use**: Use this agenda to structure your co-planning meetings. It offers suggestions for key planning items to hit during a 45 minute planning period. Modify as needed for your teaching content. All co-planning agenda should incorporate time for teacher reflection and looking at student work for content/skill remediation. While this agenda highlights key lesson planning practices, teachers can also use the Who/What/How frame when planning each lesson segment. Roles and responsibilities can be captured in this table in the lesson plan.

| | |
|---|---|
| **Reflect on co-teaching/ student needs? (2 min)** <br> • What worked well in our co-teaching for yesterday's lesson? <br> • What didn't? | |
| **Co-planning from Assessment  (10 min)** <br> 1. Looking at Student Work <br>   a. What skills/content were assessed? <br> 2. Update Progress Monitoring <br>   a. Track who met goals with varying levels of mastery <br> 3. Implications for instruction <br>   a. What needs to be retaught? <br>   b. When/what co-teaching model? | |
| **Co-planning Instruction (30 min)** <br> 1. Align a clear lesson objective and assessment (both)(~3m) <br> 2. Create **flexible assessment** (options for expression) (SpEd/ENL) (~2m) <br> 3. Sequence learning activities and CFUs that build toward assessment (content) (~7m) <br> 4. Intentionally plan for scaffolding thinking, addressing misconceptions (both) (~5 min) <br> 5. Integrate accessible materials and instruction (SpEd/ENL) (~7 m) <br> 6. Consider individual needs and identify corresponding strategies to support individual learners (SpEd/ENL) (~5 m) <br> 7. Based on objective, tasks and what you know about your students, strategically choose co-teaching models (both) (~5m) | |
| **Assign Responsibilities (3 min)** <br> • Identify needed materials <br> • Clarify co-teaching roles/responsibilities during instruction | |

In so far as Ms. Vora's statement that Principal Erickson has asked to meet with her and her co-teacher on a weekly basis concerning the ICT Living Environment class, I have been assured that this request was never made of Ms. Vora. In fact, since Ms. Vora's current evaluation indicates effective or highly effective teaching elements there is no requirement that this type of a meeting take place. Further, since your letter and its accompanying medical documentation suggest that Ms. Vora no longer meet for professional development with A.P. Hernandez, I will gladly honor your request maintaining A.P. Jimyung-Nam as Ms. Vora's immediate supervisor and I will no longer require professional learning meetings be held between Ms. Vora and A.P. Hernandez.

Unfortunately, your request to re-engage the outside teaching consultant, Ms. Ella Scope to provide professional support for Ms. Vora is not possible at this time due in part to school budgetary constraints. Instead, I will ask that Principal Erickson provide Ms. Vora with prior notification and time to attend district professional learning opportunities on Special Education.

Focus                    Feedback                    Follow Through





Office of The Superintendent of Citywide Transfer High Schools
198 Forsyth Street New York, N.Y. 10002   (646) 654 –1261
Paul Rotondo, Superintendent / John Sullivan, Deputy Superintendent

Finally, to address both you and Ms. Vora's email request for information about school safety, a
dean position and weapons in school. I have asked that Principal Erickson make this a portion of
an upcoming faculty conference at which she discusses what protocols are in place at the school,
what actions are being taken to ensure safety and to review both the NYC Student Discipline
Code and the NYC Citywide Behavioral Expectations to Support Student Learning.

It is my hope that I have addressed Ms. Vora's issues and concerns.

Sincerely,

Paul Rotondo
Superintendent, Citywide Transfer High Schools

Cc:   Dr. Timothy Lisante, Executive Superintendent
      Kristin Erickson, Principal, MCNDHS
      John Sullivan, Deputy Superintendent Citywide Transfer Schools
      Lisa Becker, Senior Field Counsel

**Focus**                    **Feedback**                    **Follow Through**

## Fw: Remomder- MCNDHS Fw: Shifting Roles in the Administration

From: Vora Shreedevi (svora2@schools.nyc.gov)

To: shreemvora@yahoo.com

Date: Thursday, June 16, 2022, 05:28 PM EDT

---

**From:** Vora Shreedevi <SVora2@schools.nyc.gov>
**Sent:** Wednesday, March 23, 2022 12:52 PM
**To:** Rotondo Paul <PRotond@schools.nyc.gov>; Bryan Glass <bglass@ghnylaw.com>
**Cc:** Lisante Tim <TLisant@schools.nyc.gov>; Sullivan John <JSulliv3@schools.nyc.gov>; Becker Lisa <LMBecke@schools.nyc.gov>
**Subject:** Remomder- MCNDHS Fw: Shifting Roles in the Administration

Please see e-mail below sent on March 9th to this same group. The very next day, on March 10th, Ms. King made me uncomfortable.

---

Good afternoon, Superintendent Rotondo and Ms. Erickson.

This is my fourteenth year at MCNDHS.  Historically, the school has never had "5 assistant principals" covering the day and night school sessions.

Please see e-mail below on "shifting roles in Administration".

Furthermore, the role of establishing a tone, good morale and a sound culture and climate has always been that of the school principal.  Founder of the school, Mr. Howard Friedman, was a master at establishing this kind of a wonderful culture so that the school thrived, and no one ever wanted to leave. The fact that this "unique. legacy school" has thrived and survived for over 30 years is a testament to that.

Presently, the sudden and completely non-transparent addition and hiring of Assistant Principal LaFleur King. without any prior public discussion,  as "Assistant Principal Supervision" to oversee the night school faculty has completely caught me and might I add, faculty and the school community completely off guard.

While budget, is often cited as a primary reason for several things not being granted, it is quite surprising that there was budget to hire a new assistant principal.

In addition, this has caused a lot of widespread confusion and anxiety about the delineation of supervisory roles.

Ms. Erickson, who is now my direct supervisor, Ms. Nam---who is the science content area expert and has depth of knowledge in science content and pedagogy, particularly for the MCNDHS population or Ms. LaeFleur who is new to school and has an ELA background?

6/20/22, 3:08 PM
Case 1:22-cv-10891-UA - Document 1 Filed 12/24/22 Page 57 of 58
School Mail - Fwd: Fwd: Shifting Roles in the Administration

Based on my years of developing excellent curriculum and brainstorming with Ms. Nam on science---I certainly hope that I can continue working with her and that you Ms. Erickson will support that.  This elimination of content-based departments and separation of night and day schools is very concerning and anxiety causing.

Sincerely,
Ms. Vora

---

**From:** Shree Vora <shree.vora@mcndhs.com>
**Sent:** Wednesday, March 9, 2022 12:45 PM
**To:** Vora Shreedevi <SVora2@schools.nyc.gov>
**Subject:** Fwd: Shifting Roles in the Administration


---------- Forwarded message ---------
From: **Kris Erickson** <kris.erickson@mcndhs.com>
Date: Wed, Mar 2, 2022 at 8:44 PM
Subject: Shifting Roles in the Administration
To: Everyone in MCNDHS <everyone@mcndhs.com>


Hi Everyone,

The roles among the Assistant Principals will be shifting soon.  Here are the shifts in general terms.

AP Admins:

Raquel Hernandez will be the AP for Climate and Culture.  She will handle most student facing activities.  Raquel will also oversee all recruiting outside the school building.  She will continue to be responsible for all Special Education compliance.

Irene Lau will be AP Organization.  She will oversee all operational issues in the building.  Irene will handle all testing.  She will continue to be responsible for all ENL compliance issues and enrollment.

Christopher Mattura will continue as AP Pupil Personnel.  He will oversee all guidance matters and enrollment.  Chris will also continue to be responsible for all security issues in the building.  He will continue to supervise the physical education department.

AP Supervision:

LaFleur King will be responsible for all the observations of the night teachers.  She will handle all instructional matters for our night program.

Ji Myung Nam will be responsible for all the observations of the day teachers.  She will handle all instructional matters for our day program.

Both LaFleur and Ji Myung will be responsible for any curriculum issues and initiatives, including sitting on the accreditation committee.

I will discuss this more at Monday's Faculty meeting.

Kris
--
Kris Erickson

I.A. Principal
Manhattan Comprehensive Night & Day H.S.
240 2nd Avenue
New York, NY 10003
212-353-2010 ext. 322
kris.erickson@mcndhs.com